THE BOARD OF EDUCATION OF THE VOCATIONAL SCHOOL IN THE COUNTY OF CAMDEN, PLAINTIFF-RESPONDENT, v. CAM/VOC TEACHERS ASSOCIATION A/K/A CAM/VOC ASSOCIATION, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 22, 1981—Decided February 24, 1982.

Before Judges BISCHOFF, KING and POLOW.

*Steven R. Cohen* argued the cause for appellant (*Selikoff & Cohen*, attorneys).

*Kenneth D. Roth* argued the cause for respondent (*Davis & Reberkenny*, attorneys).

The opinion of the court was delivered by

KING, J. A. D.

This public sector labor dispute has touched many bases—the grievance procedure, a scope of negotiations petition before PERC, a scheduled arbitration, a Chancery Division hearing, a transfer to the Commissioner of Education and now this appeal.

On September 25, 1979 the Camden Vocational Teachers Association (Association) filed two grievances against the Board of Education of the Camden County Vocational School (Board). Grievance No. 3–79 complained of loss of one period of daily preparation time for so-called "related" teachers, those who teach the theory which students must learn in preparation for shop classes. Grievance No. 4–79 complained of the assignment of teachers to the additional duty of in-school suspension and to lavatory checks. Both grievances alleged violation of the extant negotiated agreement between the Board and the Association. The Board denied the validity of the grievances. On December 26, 1979 the Association, pursuant to Article XII(c)(6) of the agreement, filed a demand for arbitration.

On February 12, 1980 the Board filed a petition for a scope of negotiations determination with the Public Employment Relations Commission (PERC). *N.J.S.A.* 34:13A–5.4(d), which states:

d. The commission shall at all times have the power and duty, upon the request of any public employer or majority representative, to make a determination as to whether a matter in dispute is within the scope of collective negotiations. The commission shall serve the parties with its findings of fact and conclusions of law. Any determination made by the commission pursuant to this subsection may be appealed to the Appellate Division of the Superior Court.

In the "Petition for Scope of Negotiations Determination" the Board made this claim:

The Association has demanded that the Board of Education submit to binding arbitration on the issue of whether the Board of Education may, without prior negotiations, remove one preparation period per day from the teachers and assign them an additional class or non-teaching duty in lieu thereof. It is the position of the Board of Education that the elimination of the preparation period and the reassignment of a class or other non-teaching duty in lieu of the preparation period was necessitated by a reduction in force which took place in the district. The reduction in teaching staff personnel required the remaining teaching personnel to pick up the classroom assignments and non-teaching duties normally performed by the staff members who were reduced. The reduction in force being a managerial prerogative and a major educational policy decision, it was non-negotiable and therefore, the impact of that decision on the remaining teaching staff members was also non-negotiable and therefore non-arbitrable.

No factual hearing on the scope petition was held but briefs were submitted. Thus, the available facts are skeletal. On June 30, 1980 PERC issued its decision and order, No. 80–162.

PERC viewed the grievances as involving three separate incidents, "all of which the association alleges relate to Article IV(B)(1) of the parties' collective agreement which provides as follows:

> Academic subject teachers shall have two (2) preparation periods per day. Every effort shall be made to grant related subject teachers two (2) preparation periods per day."

The first incident related to the elimination of one of the two daily preparation periods for the 1979–1980 year. For economic reasons the Board had reduced the teaching force by 13 members, effective June 30, 1979. Allegedly as a consequence of this reduction in force (RIF) for the 1979–1980 school year, the Board, in an effort to keep from increasing class size, had decided to reduce the number of daily preparation periods and increase the number of teaching periods by one. The second incident related to the Board's decision to assign certain teachers to supervise in-school suspensions. These teachers apparently then lost a preparation period. The Association sought additional compensation or elimination of these duties. The third incident related to a Board directive that during their preparation period teachers perform "lavatory duty" each day. This meant stepping into the student lavoratories next to the faculty lounge to insure that no untoward activity was occurring, both before and after the preparation period. This duty was alleged by the Association to have been previously performed by school custodians. The Association also sought compensation for or elimination of these duties.

PERC made the following conclusions concerning the controversy:

> The first incident—the loss of a preparation period because of a reduction in force—is controlled by *In re Maywood Board of Ed.*, 168 *N.J.Super.* 45, certif. den. 81 *N.J.* 292 (1979). In that matter the Appellate Division held that since the decision to reduce teaching personnel is a managerial prerogative, then the impact of that decision—such as increased workload for the remaining teachers—is non-negotiable. Therefore, to the extent that the Board has utilized remaining teachers to perform work previously performed by those teachers who were reduced in force, the impact of that Board decision, *i.e.* the loss of one preparation period, is non-negotiable and non-arbitrable.

The Association argues that the Board has not shown that the reduction in force was the direct and proximate cause of the increased workload and the loss of the preparation period. Therefore, the Association argues that the increase in teaching periods is a mandatory subject for negotiations and was a violation of Article IV(B)(1) of the collective agreement. However, the Commission and the Supreme Court have stated that in a scope matter the Commission will only decide whether the subject matter in dispute is within the scope of collective negotiations, and it will not decide the facts, or whether contractual defenses exist since those are questions for an arbitrator and/or the courts.[1] Consequently, the undersigned finds that if the loss of the preparation period is directly related to the reduction in force, then the impact of that decision is non-negotiable.

The Commission and the courts have held, however, that workload increases that are not attributable to a reduction in force, and are otherwise negotiable, are mandatory subjects for negotiations.[2] Thus, to the extent that the loss of a preparation period was not directly related to the Board's reduction in force, it involved a direct alteration of a mandatorily negotiable term and condition of employment.

The second incident—the assignment of teachers to supervise in-school suspensions—is also controlled by *Maywood, supra,* and *Weehawken, supra.* If the assignment of teachers to the in-school suspensions, resulting in the loss of a preparation period, was directly related to the Board's reduction in force, then the workload increase was non-negotiable. But if the assignment of teachers to the in-school suspension program was a new duty and not directly related to the reduction in force, then the increase in workload, but not the assignment itself,[3]

1*Ridgefield Park Bd. of Ed. v. Ridgefield Park Ed. Ass'n,* 78 *N.J.* 144, 154 (1978); *In re Hillside Bd. of Ed.,* P.E.R.C. No. 76–11, 1 *NJPER* 55 (1975).

2*In re Weehawken Bd. of Ed.,* P.E.R.C. No. 80–91, 6 *NJPER* (¶ 11026, motion for reconsideration denied P.E.R.C. No. 80–119, 6 *NJPER* --- (¶ --- 1980) and *Newark Bd. of Ed. and Newark Teachers Union, Loc. # 481, AFT, AFL–CIO,* P.E.R.C. No. 79–24, 4 *NJPER* 486 (¶ 4221 1979); P.E.R.C. No. 79–38, 5 *NJPER* 41 (¶ 10026 1979), aff'd App.Div. Docket A–2060–78 (2/26/80).

3The Commission has held in *In re Weehawken Bd. of Ed.,* P.E.R.C. No. 80–112, 6 *NJPER* __ (¶ __ 1980), motion for reconsideration denied P.E.R.C. No. 80–129, 6 *NJPER* __ (¶ __ 1980), and *In re Elizabeth Bd. of Ed.,* P.E.R.C. No. 80–10, 5 *NJPER* 303 (¶ 10164 1979), that where a demand for arbitration has been made the Commission must focus upon the issue sought to be arbitrated. In the instant matter the Association sought reimbursement for the in-school suspension duty and elimination of that duty. Since the duty is similar to cafeteria or lunchroom supervisory duty as set forth in *Weehawken,* P.E.R.C. No. 80–112, *supra,* the assignment to that duty is a managerial prerogative. But pursuant to *Woodstown-Pilesgrove Reg'l Sch. Dist. Bd. of*

was mandatorily negotiable and arbitrable and may have violated Article IV(B)(1) of the agreement. Again, since the Commission in a scope matter will not decide whether there is any connection between the reduction in force and the instant assignment, that issue must be submitted to an arbitrator or the courts for determination.

The third incident—the assignment of teachers to lavoratory duty—is controlled by *In re Weehawken Bd. of Ed.*, P.E.R.C. No. 80–112, supra. In that matter the Commission held that the assignment of teachers to lunchroom/cafeteria and yard duties was a managerial prerogative and non-negotiable. The assignment of teachers in this matter to lavatory duty is of a similar nature and the assignment therefore is non-negotiable. However, the balancing test set forth in *Woodstown-Pilesgrove, supra* does not prevent the Association from seeking to negotiate over the workload increase occasioned by the assignment. As discussed with the other incidents herein, to the extent that lavatory duty is a direct result of the Board's reduction in force, the assignment and workload increase is non-negotiable and non-arbitrable. But any workload increase resulting from lavatory duty unrelated to the RIF is negotiable and arbitrable.

## ORDER

Based upon the above, it is hereby determined that Article IV(B)(1) is a mandatorily negotiable term and condition of employment which is arbitrable if otherwise arbitrable under the parties' agreement. However, any loss of or intrusions upon preparation periods which is a direct result of the Board's reduction in force is neither negotiable nor arbitrable.

The Board's request for a permanent restraint of arbitration is hereby denied. The arbitrator is directed to proceed in a fashion consistent herewith.

PERC's decision left to the arbitrator the task of determining factually if the increased workload was a result of the RIF and thus beyond the scope of negotiation and arbitration. No appeal was taken from PERC's order as permitted by *N.J.S.A.* 34:13A–5.4(d).

On November 12, 1980 the Board sought to enjoin arbitration by moving in the Chancery Division for a restraining order. On January 29, 1981 the Chancery Division judge acceded to the Board's argument, permanently restrained the arbitration pro-

---

*Ed. v. Woodstown-Pilesgrove Reg'l Ed. Ass'n*, 81 *N.J.* 582 (1980), certain workload increases may be negotiated. Therefore, in the instant matter the Association cannot appropriately challenge the Board's decision to assign in-school supervision duty, but the workload increase is mandatorily negotiable and disputes concerning same may be submitted to arbitration.

ceeding and granted the Board's application to transfer the matter to the Commissioner of Education, see *N.J.S.A.* 18A:6–9, pursuant to *R.* 1:13–4(a). The tortuous route of the dispute continued with an appeal to this court by the Association.

Because there has never been any factual hearing in the dispute, the actual battle lines are somewhat blurred. At the outset we perceive there is no real dispute that the RIF of 13 teachers at the end of the 1978–1979 school year was for reasons of educational policy and economy. The Association seems to equivocate on the point that if the RIF increased workloads of the surviving teachers, these increases must be shouldered by the remaining professional staff without further negotiations and compensation. We believe that the Association really contends that it has the right to negotiate concerning additional duties, and if unsuccessful, to grieve the right to obtain compensation for performing these added tasks if they are RIF related. The Association clearly disputes the basic RIF-related impact of these increased duties. The Board contends that all items are beyond the scope of negotiations.

We are convinced that the Chancery Division judge erred in transferring the matter to the Commissioner of Education as a dispute arising under the school laws. *N.J.S.A.* 18A:6–9. This was a labor dispute properly before PERC on a "scope of negotiations" petition. *Bernards Tp. Bd. of Ed. v. Bernards Tp. Ed. Ass'n,* 79 *N.J.* 311, 317 (1979). The RIF was an accomplished fact; it was not in dispute. The Board had acted as a matter of educational and economic policy. But the impact of the RIF on working conditions was in dispute in two respects: (1) did the RIF necessitate increased workloads and (2) could the teachers still negotiate for additional compensation or concessions if the increases were RIF-related. These were the scope of negotiations questions which PERC left to the arbitration process.

Our problem with PERC's decision is that it did not decide what portion, if any, of the Association's grievances were within the scope of public sector negotiations under *N.J.S.A.* 34:13A–5.-

4(d) and what was not within the scope of negotiations. We perceive that the "scope" issue was left in fact to the arbitrator.

■ We recognize that PERC should "address the abstract issue" and must leave the resolution of the actual dispute properly subject to negotiation to the arbitrator. *See Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed.*, 78 *N.J.* 144, 154 (1978). But the controlling statute clearly requires PERC "to make its findings of fact and conclusions of law" as to "whether a matter in dispute is within the scope of collective negotiations." *N.J.S.A.* 34:13A-5.4(d). PERC's opinion in the present matter seems to suggest that the arbitrator alone must find the facts which determine whether "a matter in dispute is within the scope of collective negotiations." *Ibid.* We conclude that if scope of negotiability turns on a dispute of facts, as it seems to here, the Legislature contemplated that PERC, not the arbitrator, resolve that factual dispute. PERC's regulations clearly provide for evidentiary hearings in scope of negotiations proceedings. *N.J.A.C.* 19:13-3.6 and *N.J.A.C.* 19:13-3.7.

■ We therefore remand to PERC for it to conduct an appropriate hearing and make "findings of fact and conclusions of law" as to whether the three seemingly disputed items, (1) the loss of a preparation period, (2) the assignment to supervise an in-school suspension period and (3) the assignment to check lavatories before and after the preparation period, were properly within the scope of collective negotiations. If they were, the matter should proceed to arbitration; if not, PERC should permanently restrain arbitration. *Ridgefield Park, supra,* 78 *N.J.* at 154-155. Where "the threshold issue of whether the subject matter of the grievance is within the scope of collective negotiations is contested . . . a ruling on that issue must be obtained from PERC." *Id.* at 155. *See, also, Woodstown-Pilesgrove Sch. Dist. Bd. of Ed. v. Woodstown-Pilesgrove Ed. Ass'n,* 81 *N.J.* 582, 590 (1980); *Caldwell-W. Caldwell v. Caldwell-W. Caldwell Bd. of Ed.,* 180 *N.J.Super.* 440, 446 (App.Div.1981); *In re Maywood Bd. of Ed.,* 168 *N.J.Super.* 45 (App.Div.), certif. den.

81 *N.J.* 292 (1979). If the subjects of the grievances are within the scope of collective negotiations, they are clearly within the scope of arbitration. See Article XX(C).

The judgment of the Chancery Division is vacated. The matter is remanded to PERC for further proceedings; jurisdiction is not retained.