277 N.J. Super. 538 (1994)
650 A.2d 7
DELRAN EDUCATION ASSOCIATION, PLAINTIFF-RESPONDENT,
v.
DELRAN BOARD OF EDUCATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 25, 1994.
Decided December 6, 1994.
*540 Before Judges BRODY, LONG and ARNOLD M. STEIN.
John T. Barbour, attorney for appellant.
Selikoff & Cohen, attorneys for respondent (Steven R. Cohen, of counsel; Kenneth A. Sandler, on the brief).
The opinion of the court was delivered by BRODY, P.J.A.D.
Defendant Delran Board of Education (Board) appeals from an order confirming an arbitrator's award in favor of one of its certified learning-disabilities teachers, Norma Roth. The arbitration was the final step in a grievance procedure outlined in the employment contract between the Board and plaintiff Delran Education Association. The Board had denied Roth a salary increment for the 1992-93 year because, in the words of a letter to her signed by school superintendent Carl Johnson on behalf of the Board, "on or about February 19, 1992, you behaved in a manner which was not appropriate for a teaching staff member." The reference is to a single encounter between Roth and Johnson. The Board contends that the arbitrator's award unlawfully trespassed upon its management prerogative to set standards of appropriate employee behavior. We reject the Board's argument and affirm the judgment.
At the time in question, the Board offered a learning-disabilities program operated by its Child Study Team. Stanley Halpern was the Acting Coordinator of the Team, which included Roth who had been on the Team for nine years and is certified as a learning-disabilities teacher-consultant. The Team staff also included Sandra Fisher, its clerk, and Ellen Kowal, its secretary.
*541 The Board had engaged an outside contractor to evaluate the program. In order to do so, the contractor had to review the records of a sampling of the pupils enrolled in the program. That presented a problem because under the law, pupil records ordinarily were not available to people who are not part of the school staff. Also, apart from the law, parents may object to their children's school records being examined by such people.
Parents of some of the children in the program attended a Board meeting in January 1992 and raised those objections. They expressed their concern about the confidentiality of their children's school records and asked whether they would be given the opportunity to refuse consent before the records are given to the contractor. The evidence is in conflict as to whether Johnson assured the parents that their permission would be sought before disclosure. The arbitrator found that Fisher and Kowal, the Team clerk and secretary, were at the meeting and reasonably understood from Johnson's assurances that pupil records would not be disclosed to the contractor in the absence of parental consent.
The alleged misconduct occurred the following month at the Team office. Johnson appeared there with Toni Spiotta, the contractor's representative, to obtain copies of a random selection of pupil records. Fisher and Kowal told Johnson that they did not want the responsibility of selecting the records for Spiotta's inspection. In addition to their general concern about confidentiality, they recalled Johnson's assurance to the parents at the Board meeting that records would not be disclosed without parental consent. Halpern, who was in charge of the office, was elsewhere at a meeting. That left Roth as the only certified Team professional who was present. When Johnson ordered her to select the records, she declined to do so, believing that disclosure without parental consent would violate the law. She stated that she would not object to copying the records and blacking out the children's names if Johnson made the random selections. He insisted that she make the selections. Her refusal is the alleged *542 "inappropriate behavior" that caused the Board to deny her the salary increment.
A week after Roth's alleged misconduct, twenty-five to thirty parents whose children's records were chosen for the study were contacted by Halpern, Coordinator of the Team. He sent them the following letter:
Your child was chosen at random for a study being conducted for the Delran Board of Education by a representative of a consulting firm. (Child Study Team, Inc.) We have been asked to black out identifying information and forward these records to the consultant, Ms. Spiotta, the director of the Psychoeducational center at the Montclair State College.
Should you have any concerns about your child's Child Study Team records being used for this project, please contact our office prior to March 9.
Eight parents responded by objecting to the release of their children's records.
The Board concedes that the employment contract does not permit it to deny an annual increment "without just cause." The New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -29, provides that withholding an employee's increment "for predominantly disciplinary reasons shall be subject to the grievance procedures established pursuant to law." N.J.S.A. 34:13A-26. Here, those grievance procedures culminate in referring the dispute to arbitration pursuant to the employment contract. An arbitrator's decision is entitled to a presumption of validity and the party opposing the award has the burden of establishing that the award be vacated. Jersey City Educ. Ass'n Inc. v. Board of Educ. of City of Jersey City, 218 N.J. Super. 177, 187, 527 A.2d 84 (App.Div. 1987). Our standard of review requires us "to determine whether the arbitrator followed the inherent guidelines applicable to public sector arbitration and whether the interpretation of the contractual language is reasonably debatable." State, Dept. of Law and Public Safety, Div. of State Police v. State Troopers Fraternal Ass'n of New Jersey, Inc., 91 N.J. 464, 469, 453 A.2d 176 (1982).
One of the "inherent guidelines" that circumscribe an arbitrator's authority bars "prerogatives of management" from arbitration. *543 Kearny PBA Local No. 21 v. Town of Kearny, 81 N.J. 208, 215, 405 A.2d 393 (1979). The Board argues that once the arbitrator found that Roth deliberately disobeyed Johnson's order, the question of whether that conduct constituted just cause for withholding her increment is a matter of management prerogative. It relies on N.J.S.A. 34:13A-5.3, which provides: "Nothing herein shall be construed as permitting negotiation of the standards or criteria for employee performance."
The Board overlooks the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -8, which defines "employer" to include a "school district." N.J.S.A. 34:19-2a. The Act provides in relevant part:
An employer shall not take any retaliatory action against an employee because the employee does any of the following:
* * * * * * * *
c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
(1) is in violation of a law, or a rule or regulation promulgated pursuant to law.
[N.J.S.A. 34:19-3]
The arbitrator in effect found that Roth refused to obey Johnson's order in the reasonable belief that to obey the order would be "in violation of a ... regulation promulgated pursuant to law."
It is not clear that N.J.A.C. 6:3-2.5, the regulation relied on by the Board, permitted access to pupil records by an outside contractor. At the time in question, the regulation, entitled "Access to pupil records," provided in relevant part:
(a) Only authorized organizations, agencies or persons as defined herein shall have access to pupil records.
* * * * * * * *
(c) Authorized organizations, agencies and persons shall include only:
* * * * * * * *
5. A district board of education, in order to fulfill its legal responsibilities as a board, has access through the chief school administrator or his or her designee to information contained in a pupil's record. Information shall be discussed in executive session unless otherwise requested by the parent or adult pupil;
*544 The regulation was amended, effective June 7, 1993, more than a year after the incident in question. The amendment renumbered its provisions and added a new paragraph that defines with particularity who may have access to pupil records. N.J.A.C. 6:3-6.5 now reads in relevant part:
(a) Only authorized organizations, agencies or persons as defined herein shall have access to pupil records.
* * * * * * * *
(c) Authorized organizations, agencies and persons shall include only:
* * * * * * * *
5. Certified educational personnel who have assigned educational responsibility for the pupil and who are employed by:
i. An approved private school for the handicapped;
ii. A state facility;
iii. Accredited nonpublic schools in which pupils with educational disabilities have been placed according to N.J.S.A. 18A:46-14; or
iv. Clinics and agencies approved by the Department of Education;[[1]]
6. A district board of education, in order to fulfill its legal responsibility as a board, has access through the chief school administrator or his or her designee to information contained in a pupil's record. Information shall be discussed in executive session unless otherwise requested by the parent or adult pupil;
The new N.J.A.C. 6:3-6.5(c)5 demonstrates that more specific definitions of the agencies to whom access to pupil records may be given was necessary because the prior regulation, in effect at the time of Johnson's order to Roth, was either unclear or not sufficiently comprehensive. The arbitrator could find that either deficiency led Roth to believe reasonably that to obey Johnson's order would be a violation of the law.
Affirmed.
NOTES
[1] The Board argues that Johnson acted properly in ordering Roth to disclose pupil records to a representative of the independent contractor, because the contractor meets the definition found in N.J.A.C. 6:3-6.5(c)5iv, a regulation that did not exist at the time Johnson's order was given. Plaintiff has moved before this court to strike that part of the Board's brief and appendix referring to the new regulation. We deny the motion, but reject the Board's argument because the regulation was adopted after Roth had refused to obey Johnson's order.