976 A.2d 1136 (2009)
409 N.J. Super. 344
TOWNSHIP OF WYCKOFF, Plaintiff-Respondent,
v.
PBA LOCAL 261, and Brenda Groslinger, Defendants-Appellants.
DOCKET NO. A-2268-07T2, A-2527-07T2
Superior Court of New Jersey, Appellate Division.
Argued May 13, 2009.
Decided August 26, 2009.
*1137 D. John McAusland, Englewood, argued the cause for appellant PBA Local 261.
Sanford R. Oxfeld argued the cause for appellant Brenda Groslinger (Oxfeld Cohen, P.C., attorneys; Mr. Oxfeld, of counsel, Newark; Jennifer L. Gottschalk, on the brief, Trenton).
Raymond R. Wiss, Hakensack, argued the cause for respondent (Wiss & Bouregy, P.C., attorneys; Mr. Wiss, of counsel and on the brief; Thomas K. Bouregy, Jr., on the brief).
Before Judges A.A. RODRÍGUEZ, PAYNE and NEWMAN.
The opinion of the court was delivered by
*1138 PAYNE, J.A.D.
In these consolidated appeals, PBA Local 261 and its member, Brenda Groslinger, appeal from a trial court's order vacating an arbitration award in appellants' favor, as exceeding the power of the arbitrator and violating public policy, and remanding the matter for a new arbitration before a different arbitrator. We reverse.

I.
The procedural and factual basis for this appeal is somewhat lengthy. At the time of the events in issue, Groslinger had been a patrol officer with the Wyckoff Police Department for approximately six or seven years. She was the only female member of the Department among twenty-four to twenty-six officers. During a prior pregnancy, Groslinger had sought to continue work in a non-patrol position. Although the Department did not have an official light duty policy, Police Chief Ydo had accommodated Groslinger's condition by assigning her to three months of training in the duties of a detective followed by an assignment to an open dispatch position.
Within a year of Groslinger's return to work after delivery of her first child, she again became pregnant, and again sought to be employed in a light-duty assignment. However, this time, no open dispatch positions existed, and as a result, Groslinger was assigned by Chief Ydo to perform administrative work and assume the duties of a per diem civilian dispatcher on an as-needed basis. Whereas Groslinger always previously had the benefit of a regular schedule, known one year in advance, the new position required her to work very irregular hours, sometimes with as little as eight hours between shifts, and with only one month or less notice of her schedule.
On September 14, 2005, Groslinger provided the Department with a physician's note stating that she could no longer perform the duties of a police officer as the result of her pregnancy. On the following day, Chief Ydo sent correspondence to Groslinger directing her to provide, on or before September 19, a specific indication from Groslinger's physician of the work activities/job functions she was able to perform. The doctor responded by stating that "[w]e see no reason for her to be unable to do the civil dispatch position at this time." On September 21, 2005, Chief Ydo advised Groslinger to return to work on September 23, which she did.
Additionally, in a letter dated September 23, Chief Ydo noted that Groslinger had spoken to her physician on September 16 regarding her work status, but she did not inform her supervisor of her medical clearance or report for work in the period from September 17 through 20. Groslinger was directed to immediately prepare a written report explaining her absence and her failure to contact her supervisor. In response, Groslinger filed a grievance, dated September 30, 2005, protesting the Department's alleged sexual harassment and claiming discrimination as the result of the failure of the Department to offer paid sick leave for any pregnancy-related leave she might need in the future. According to Groslinger, "[s]uch conduct violate[d] sections 1.01, 3.01 and 21.00 as well as any other applicable provisions of the Collective Bargaining Agreement, The New Jersey Law Against Discrimination, and the New Jersey Family Leave Act." The matter was referred to the Township Administrator for further investigation, resulting in a report delivered in December 2005.
On November 2, 2005, Groslinger and the PBA signed an agreement with Ydo acknowledging that neither the Department nor the Township had adopted a light duty policy or practice, but nonetheless agreeing that as a non-precedential accommodation, Groslinger would be assigned to *1139 police administrative functions and dispatch duty for so long as a need for such services existed. Groslinger and the PBA also acknowledged "the unprecedented and temporary nature of [the] reassignment" and that shift changes were "possible, and more than likely," due to the as-needed basis of some of Groslinger's functions. The agreement further stated that the days in August that Groslinger had been absent from work would be treated as sick leave, pursuant to Article 21 of the collective bargaining agreement. Further, the agreement provided that if Groslinger were deemed medically unable to work, she would be "entitled to be paid sick leave in accordance with the applicable Collective Bargaining Agreement and the Township's personnel policies." The agreement provided that, by signing, no party was waiving any statutory or contractual rights that they might have.[1]
On December 7, 2005, Groslinger served a further grievance. In it, she stated that since informing Chief Ydo of her intention to take sick leave for her pregnancy, she had been ordered to work in an "administrative" position as a "civilian dispatcher," an out-of-title job, in violation of Article 21.00 of the collective bargaining agreement "in that there is no provision requiring officers to work in alternate job positions when that officer has a medical condition." Groslinger then set forth Article 21.01, which stated: "Sick leave shall be granted to all members of the Department for a reasonable length of time up to one (1) year considering the type and extent of the sickness and the length of service time that the member has had with the Department." Groslinger continued by alleging that the Department had no contractual authority to implement a policy requiring her to work out-of-title in an "administrative" or "civilian dispatcher" position while suffering from an illness, and that the unilateral change in the terms and conditions of her employment violated the collective bargaining agreement and the Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -30. Groslinger sought rescission of the Department's order that she work in a position outside her job description and that it make her whole for other losses that she had suffered.
Chief Ydo denied Groslinger's grievance on the basis that Groslinger had not requested sick leave, and indeed she requested a continuation of work assignments compatible with her condition. Groslinger appealed the decision to the Township Committee, which denied the appeal on January 11, 2004, noting that the work request had emanated from Groslinger, that she had not requested sick leave, and that any such request would be honored.
A request to the Public Employees Relations Commission (PERC) for arbitration was thereupon filed, and on May 19, 2006, an arbitration hearing was held. The grievance was specified to be "unilateral change in maternity benefit administration."
In the meantime, commencing in November 2005, Groslinger had been seeking a specification of the number of sick days to which she was entitled. By letter dated April 5, 2006, she was informed that she had twenty-seven remaining sick days as of December 31, 2005. This allocation was said to be consistent with a Township sick leave policy, dated April 10, 2006, granting *1140 each Township employee fifteen sick days per year. On April 11, 2006, Groslinger filed a further grievance alleging that the Township's newly promulgated sick leave policy violated the one-year sick leave provision of Article 21.00 of the collective bargaining agreement. A further grievance on this subject was filed by the PBA. Following denial by Chief Ydo and the Township Committee, the matters were referred to arbitration and a settlement was reached "premised upon certain mutually acceptable revisions to the language in Article 21" of the collective bargaining agreement. The terms of that settlement have not otherwise been specified, and at oral argument, counsel for the PBA asserted without contradiction that the settlement was not consummated.
Additionally, on April 17, 2006, Groslinger filed a civil action against the Township and Chief Ydo alleging violations of the Law Against Discrimination and the Conscientious Employee Protection Act and seeking entry of a cease and desist order, together with compensatory and punitive damages and other relief.
At the arbitration of the December grievance, the parties "mutually agreed to frame the issue for determination" as follows:
Did the Township violate the Collective Bargaining Agreement when it required Police Officer Brenda Groslinger to work as a Civilian Dispatcher during her pregnancy in 2005 and 2006?
If so, what shall be the remedy?
In a written opinion dated June 22, 2006, the arbitrator answered the question of violation in the affirmative, determining that the following provisions of the collective bargaining agreement had been breached;
Employee's Basic Rights, 1.01
There shall be no discrimination by the Township or the PBA against Employees on account of race, color, creed, sex or national origin.
Sick Leave, 21.00
Sick leave shall be granted to all members of the Department for a reasonable length of time up to one (1) year considering the type and extent of the sickness and the length of service time that the member has had with the Department. The Officer in charge of the Department at the time may personally verify any request for sick leave.... The Chief of Police may require a doctor's certificate, or may require that the member submit to a physical when the sick leave extends beyond two (2) days.
Preservation of Benefits, 37.02
The Employer agrees that all benefits, terms and conditions of employment relating to the status of Employees, which benefits, terms and conditions of employment are not specifically set forth in this Memorandum of Agreement, shall be maintained at not less than the highest standards in effect at the time of the commencement of the collective bargaining negotiations between the parties leading to the execution of this Memorandum of Agreement.
Preservation of Benefits, 37.03
Unless a contrary intent is expressed in this Memorandum of Agreement, all existing benefits, rights, duties, obligations and conditions of employment applicable to any Employee pursuant to any rules, regulations, practice, statute, or otherwise, shall not be limited, impaired, removed, or abolished.
The arbitrator found, among other things, that Article 1.01 was violated, because "no male officer was ever required to have their doctor prescribe their duties." Additionally, Groslinger, unlike others, was required to sign a letter indicating that her accommodation was nonprecedential, and was required to perform *1141 assignments despite protests. Moreover, "Officer Groslinger was not given regular assignments with consistent schedules, duties and hours to be worked. Male officers worked with regular schedules and duties with a medical condition."
The arbitrator also found that "[t]he Township, by changing their accommodation process for a female officer, violated the Collective Bargaining Agreement, sections 37.00 Preservation of Rights, and 37.02 and 37.03 by lowering the status of Officer Groslinger because she was a female working with a medical condition." Those actions changed her "existing benefits, rights and duties, and conditions of employment in the assignments, duties and schedules that she was given."
Additionally, the arbitrator found the Township violated the sick leave policy found in Article 21.00 when it imposed onerous conditions upon any grant of leave and when it unilaterally imposed a fifteen-day per year accrual policy that was not contained in the collective bargaining agreement. The agreement, he found, indicated sick leave of "up to one year." These practices likewise violated the maintenance of benefits clauses found in Articles 37.02 and 37.03. As a consequence of these violations, the arbitrator ordered the Township
to cease and desist from discriminating against female Police Officer Brenda Groslinger in violation of the Collective Bargaining Agreement. The Township of Wyckoff is hereby ordered to cease and desist from making assignments of Officer Brenda Groslinger to duties and schedules outside of her job description of Police Officer, in violation of the Collective Bargaining Agreement.
The Township of Wyckoff is hereby ordered to cease and desist from imposing a unilateral township sick leave policy on Police Officer Brenda Groslinger, and to cease and desist from circumventing the intent of the negotiated Sick Leave provisions contained in the Collective Bargaining Agreement.
In response to the arbitrator's decision, on September 19, 2006, the Township filed a civil complaint against the PBA and Groslinger seeking reversal of the arbitration award, a declaratory judgment vindicating the Township and other relief. The PBA and Groslinger filed an answer and crossclaim seeking confirmation of the arbitrator's award.
The matter was eventually scheduled for a trial as a summary proceeding. Prior to the trial date, the PBA and Groslinger filed a motion designated as a motion for summary judgment, returnable on the trial date, seeking dismissal of the Township's complaint for failure to state a claim upon which relief could be granted and confirmation of the arbitration award. Briefing was also submitted on behalf of the Township, but it did not bear the same "summary judgment" designation.
Additionally, the PBA and Groslinger filed a motion in limine seeking to suppress and exclude from consideration certifications given by Robert Shannon, Jr., Joseph Fiorenzo and a very lengthy certification by Chief Ydo. On the day of trial, the motion was granted with respect to the Shannon and Fiorenzo certifications, but denied as to Chief Ydo.
As a procedural matter, counsel for the PBA[2] conceded that, because the matter was proceeding in a summary fashion, effectively the briefing submitted by the parties constituted cross-motions for judgment. Nonetheless, the trial judge required, in accordance with summary judgment procedure, that counsel for the PBA argue first, and he viewed the evidence in *1142 the light most favorable to the opposing party, the Township. At the conclusion of the argument on "summary judgment," the judge concluded that an ambiguity existed as to the issue presented for arbitration, and for that reason, summary judgment could not be granted. The judge then observed:
Defendants have instigated proceedings for the purpose of addressing sick leave and gender discrimination, separate and independent from the current action.
As a result, the Court is presented with uncontroverted evidence that the parties never requested the involvement of [the arbitrator] to evaluate possible violations of the [collective bargaining agreement's] sick leave provision and gender discrimination[ ] clause, giving Plaintiff, as a non-moving party, the benefit of all favorable inferences.
The judge then concluded that the arbitrator had exceeded the scope of his authority when issuing his findings on those issues. In reaching this result, the judge found significant the disclosure by Chief Ydo in his certification that there had been a second grievance regarding sick leave that had been settled prior to the arbitration at issue and that Groslinger had also filed a civil action claiming discrimination by the Township and Ydo. The existence particularly of the discrimination suit was utilized by the judge as a basis for vacating the arbitration award.
Additionally, the judge grounded his determination to vacate the award on his conclusion that it violated public policy. In this regard, the judge found that the arbitrator had improperly failed to consider "the financial impact of an award on the residents of Wyckoff." The judge then noted that the pendency of the discrimination action, along with the arbitration proceeding, gave rise to the possibility that "the residents and taxpayers could be forced to pay damages to the same party in two cases based on exactly the same facts and/or conduct." The award was thus vacated and the matter remanded for a further arbitration before a different arbitrator.

II.
N.J.S.A. 2A:24-8 provides that a court shall vacate an arbitration award for any of the following causes:
a. Where the award was procured by corruption, fraud or undue means;
b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;
d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.
An arbitrator's award "is entitled to a presumption of validity and the party opposing confirmation ha[s] the burden of establishing that the award should be vacated pursuant to N.J.S.A. 2A:24-8." Jersey City Educ. Ass'n v. Bd. of Educ. of City of Jersey City, 218 N.J.Super. 177, 187, 527 A.2d 84 (App.Div.), certif. denied, 109 N.J. 506, 537 A.2d 1295 (1987); see also Delran Educ. Ass'n v. Delran Bd. of Educ., 277 N.J.Super. 538, 542, 650 A.2d 7 (App.Div.1994). In this matter, the trial judge reversed the burden of proof, giving the Township as the challenger "the benefit of all favorable inferences" when determining that the arbitrator exceeded his *1143 powers. The judge was mistaken in doing so. We reject the Township's argument that the trial judge merely disposed of the summary judgment motion by finding issues of fact, and then summarily "tried" the matter, finding that conclusion to be at odds with the clear wording of the judge's decision in this respect.
We also conclude that the trial judge may have used the wrong standard in reviewing the arbitrator's interpretation of the issue submitted to him. In this regard, New Jersey precedent holds that the standard for reviewing an arbitrator's interpretation of the collective bargaining agreement is a deferential one. As the Supreme Court held in New Jersey Transit Bus Operations, Inc. v. Amalgamated Transit Union, 187 N.J. 546, 902 A.2d 209 (2006):
An appellate court's review of an arbitrator's interpretation is confined to determining whether the interpretation of the contractual language is "reasonably debatable." Under that standard, a reviewing court may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's interpretation. The policy of strictly limiting judicial interference with arbitration is intended to promote arbitration as an end to litigation.
[Id. at 553-54, 902 A.2d 209 (citations omitted).]
No New Jersey precedent addresses whether the same deferential standard should apply to a court's review of an arbitrator's interpretation of the issue submitted. However, ample federal precedent, construing the standard of review in the context of analogous provisions of the Federal Arbitration Act, 9 U.S.C.A. § 10(a)(4),[3] holds that the same deferential standard applies. For instance, in Mobil Oil Corp. v. Indep. Oil Workers Union, 679 F.2d 299 (3d Cir.1982), the court reasoned that deference should be accorded to an arbitrator's interpretation of the issue submitted because (1) a more searching judicial review would undermine the congressional policy of promoting speedy, efficient, and inexpensive resolution of labor grievances; (2) it would be inconsistent to accord deference to the arbitrator's interpretation of the collective bargaining agreement and not the submission; and (3) requiring courts to engage in a close examination of the submissions to arbitrators would put considerable strain on judicial resources. Id. at 302. See also, e.g., Matteson v. Ryder Sys., 99 F.3d 108, 112-14 (3d Cir.1996); Richmond, Fredericksburg & Potomac R. Co. v. Transp. Communs. Int'l Union, 973 F.2d 276, 280 (4th Cir.1992); Pack Concrete, Inc. v. Cunningham, 866 F.2d 283, 285 (9th Cir.1989); Madison Hotel v. Hotel & Restaurant Employees, Local 25, 144 F.3d 855, 857 (D.C.Cir.1998). We find no reason not to adopt this precedent in a state law context, particularly since the Supreme Court has relied upon federal precedent elsewhere in analogous decisions. See State v. Intern. Fed. of Professional and Technical Engineers, Local 195, 169 N.J. 505, 513-14, 780 A.2d 525 (2001) (IFPTE) (looking to federal labor jurisprudence for guidance in establishing deferential standard for review of arbitration awards).
Our review of the issue as presented to the arbitrator satisfies us that it was broad in nature, and that it could reasonably have been interpreted to encompass the issues of (1) whether Groslinger was *1144 "required" to work out-of-title, rather than to take sick leave; (2) whether the work was in fact out-of-title; (3) whether the Township's conduct violated the collective bargaining agreement; and (4) which provisions of the agreement were violated. Because Groslinger was the only female officer on the force and because evidence was introduced at the arbitration of disparate treatment of Groslinger's pregnancy when compared to treatment of male officers with medical conditions, the issue of sex discrimination was also necessarily implicated. By submitting a broad issue without limitations as to contractual provisions to be interpreted, the parties ceded to the arbitrator the duty to define the precise contours of the issue submitted. Richmond, Fredericksburg & Potomac R. Co., supra, 973 F.2d at 280.
Moreover, our examination of the post-hearing briefing submitted to the arbitrator indicates no limitation on the arbitrator's powers. Indeed, the PBA's brief contains a lengthy discussion of the collective bargaining agreement's sick leave provisions and their alleged misapplication in Groslinger's case, as well as a discussion of the Township's failure to treat her pregnancy as a disability. In the Township's brief, Groslinger's grievance is characterized as alleging discrimination against her in not offering her paid sick leave. An agreement to arbitrate a particular issue may be implied from the parties' conduct, including their actual litigation of that issue. Carpenter Local No. 1027, Mill Cabinet-Indus. Div. v. Lee Lumber & Bldg. Material Corp. 2 F.3d 796, 799 (7th Cir.1993).
We do not attach any particular importance to the fact that Groslinger had filed a discrimination lawsuit prior to the arbitration at issue.[4] The United States Supreme Court has stated that an individual does not forfeit her private cause of action if she first pursues her grievance to final arbitration under the nondiscrimination clause of a collective bargaining agreement, at least in cases in which arbitration is not mandatory. Alexander v. Gardner-Denver Co., 415 U.S. 36, 49, 94 S.Ct. 1011, 1020, 39 L.Ed.2d 147, 158 (1974). Here, the relief sought by Groslinger in her civil action was largely different from that obtained by arbitration. We see no reason in these circumstances why parallel pursuit of the two avenues of recovery should be precluded.
We likewise reject the trial judge's conclusion that considerations of public policy dictated that the arbitration award be vacated in this case. In doing so, we adhere to the view that, in a public sector arbitration context, the arbitrator may consider the cost of the remedy in fashioning relief. See, e.g., South Plainfield Bd. of Educ. v. S. Plainfield Educ. Ass'n, 320 N.J.Super. 281, 292-94, 727 A.2d 71 (App. Div.), certif. denied, 161 N.J. 332, 736 A.2d 525 (1999). However, in this case, the remedy consisted solely of a cease and desist order, and thus the issue of cost did not arise. We find no precedent to support an argument that the cost of the arbitration itself should factor in the arbitrator's decision. Indeed, we do not see how it could do so without unjustifiably undermining what is generally recognized as a beneficial process. IFPTE, supra, 169 N.J. at 513, 780 A.2d 525.
In sum, our review of the arbitrator's decision in this matter satisfies us that the arbitrator's interpretation of contractual language was reasonably debatable, New Jersey Transit, supra, 187 N.J. at 554, 902 A.2d 209, and that the arbitrator neither *1145 exceeded his powers nor violated public policy by his award. That award is thus confirmed. See R. 2:10-5.
The decision to vacate the arbitrator's award in this matter is reversed.
NOTES
[1] Ydo contended in a certification that, at the time of the November 2 agreement, the parties also agreed to "settle" the September 30, 2005 grievance, subject to Groslinger's right to appeal the decision of the Township Committee once it received the results of the Township Administrator's investigation. Ydo also contended that no such appeal was ever filed. However, no documents have been presented to support these contentions.
[2] Groslinger was separately represented at the trial.
[3] Using almost the same language as N.J.S.A. 2A:24-8, the statute provides that a district court may vacate an arbitration award if, among other things, "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."
[4] We find it unnecessary to discuss at length the admissibility of Chief Ydo's certification. However, we note that its extensive recitation of facts and arguments based on those facts should have been offered through testimony at the arbitration hearing.