**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3228-17T4

WEST ESSEX PBA LOCAL 81
(WEST CALDWELL UNIT),

    Plaintiff-Respondent,

v.

TOWNSHIP OF WEST CALDWELL,

    Defendant-Appellant.

_____

Argued October 16, 2018 – Decided November 26, 2018

Before Judges Yannotti, Rothstadt and Natali.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-7649-17.

Angelo J. Genova argued the cause for appellant (Genova Burns LLC, attorneys; Angelo J. Genova and Joseph M. Hannon, of counsel and on the briefs; Ryann M. Aaron, on the briefs).

Leonard C. Schiro argued the cause for respondent (Mets, Schiro & McGovern, LLP, attorneys for respondent; Leonard C. Schiro, of counsel and on the brief; Julian N. Krol and Ryan E. Ross, on the brief).

PER CURIAM

The Township of West Caldwell appeals from an order entered by the Law Division on February 21, 2018, which vacated an arbitration award and found that Sergeant Daniel Gorman was entitled to an additional $14,185.61 in terminal leave payments for vacation and sick leave. We affirm.

I.

The Township and West Essex PBA Local 81, West Caldwell Unit (PBA), are parties to a collective negotiations agreement (CNA), which is effective from January 1, 2015, through December 31, 2019. Article V of the CNA governs vacation and holiday time. It states, in pertinent part, that an employee covered by the agreement "shall receive vacations" based on the length of the employee's service. An employee who has served between fifteen to nineteen years receives 200 hours of vacation time. The CNA does not, however, address how an employee accumulates vacation leave if the employee retires or is separated before the end of a calendar year.

Article XIII of the CNA governs sick leave. It provides that an employee covered by the agreement shall receive a specified number of hours of sick leave, based upon the date the employee was hired. Section A of Article XIII states that "[a]ny unused sick leave days will be accumulated and compensated to the

A-3228-17T4

[e]mployee at the rate of fifty percent (50%) as terminal leave at the time of retirement or by virtue of work-connected disability-causing separation." Section C of Article XIII permits an officer to use as personal days up to two eight-hour shifts or two twelve-hour shifts from his or her total annual sick leave allotment. Section C also states that "[a]t the time of separation or retirement, the accumulated terminal leave to which an [o]fficer is entitled pursuant to Section A herein shall be reduced by one-half . . . day for each personal day used."

It is undisputed that from at least 2006 until January 2015, the Township did not prorate the vacation time earned if an employee retired or was separated before the end of the calendar year. It is also undisputed that before January 2015, the Township calculated the employee's terminal sick leave payment by first determining the total accumulated sick leave hours, and deducting one-half of the hours of the personal sick leave the employee used during his or her employment. The Township then reduced that number by fifty percent and applied the employee's final hourly rate of pay to arrive at the terminal sick leave payout.

On January 15, 2015, the Township adopted and issued a "Personnel Policies and Procedures Manual/Employee Handbook" (Handbook), which

provides in pertinent part that "[v]acation time is credited at the beginning of the calendar year, in anticipation of continued employment for the remainder of the year (it shall be accrued proportionally throughout the year)." The Handbook states that "[d]uring the final year of employment, an employee may take his/her full (or prorated share) vacation entitlement or may elect to receive payment in lieu of time off."

In January 2015, Township Administrator Adam W. Brewer held a meeting with all municipal staff, including members of the police department, and explained certain provisions of the Handbook. Brewer addressed the change in the manner in which vacation time accrues in the last year of employment. Brewer testified that at the meeting, Gorman asked him whether the Handbook applied to all of the Township's employees. Brewer responded by saying the Handbook applied to all employees, but the CNA would apply to all employees covered by the agreement in the event of a conflict.

In 2015, the Township also changed the method for calculating the terminal sick leave payments. According to Nikole Monroig, the Township's Chief Financial Officer and Assistant Administrator, certain Township officials reviewed the CNA and concluded that the method the Township had been using

to calculate the terminal sick leave payments was based on an erroneous interpretation of the contract.

The Township decided to calculate the terminal leave payments for sick time by taking the total number of hours of unused sick time the employee had accrued, and reducing that number by half. From that number, the Township would deduct one-half of the hours of personal sick leave the employee had used during his or her employment. The Township then would multiply that number by the employee's hourly rate of pay to arrive at the amount of the employee's terminal sick leave payout.

The Township applied its new calculation method for terminal vacation leave payouts to John Kopf and William Coughlin, two members of the PBA's bargaining unit who submitted retirement papers after January 15, 2015. In 2015, the Township also applied the new calculation method for the terminal sick leave payouts to Kopf, Coughlin, and William Styskal, another member of the PBA bargaining unit. The PBA did not object to the terminal leave payments for these employees.

Gorman retired from the Township's police department, effective July 1, 2016. The Township calculated Gorman's vacation leave for 2016 in accordance with the new methodology. The Township prorated his 200 hours of vacation

time for 2016, and determined that Gorman was entitled to 100 hours for that year, and 37 hours of vacation leave which he carried over into 2016.

The Township also calculated Gorman's sick leave payout in accordance with its new policy. It determined that as of June 30, 2016, Gorman had accumulated a total of 329.50 hours of unused sick time. The Township divided that number in half, arriving at 164.75 hours. Gorman had used 444 hours of personal sick time during his employment. The Township subtracted half of that number, 222 hours, from 164.75 hours, leaving a negative balance of 57.25 hours.

The PBA disputed the Township's calculations. It calculated Gorman's vacation and sick time payments in accordance with the policies that had been in effect until January 2015. The PBA asserted that Gorman was entitled to the full allotment of 200 hours for 2016, along with the 37 hours he carried over from 2015, for a total of 237 hours of vacation time. In addition, the PBA calculated Gorman's sick leave payout by deducting half of his unused personal sick leave, 222 hours, from the sick leave balance of 329.50 hours, yielding 107.50 hours. The PBA asserted that Gorman was entitled to payment for one-half of that number, or 53.75 hours.

A-3228-17T4

II.

On June 23, 2016, Gorman filed a grievance with Chief of Police Gerard Paris on behalf of himself and the PBA. Gorman alleged the Township violated the CNA by calculating his retirement payments for vacation and sick leave in accordance with the new policies adopted in 2015. The Chief of Police denied the grievance on June 24, 2016. Thereafter, Gorman filed grievances with the Township's Administrator, Mayor, and Council. The grievances were denied.

In August 2016, Gorman and the PBA submitted the grievance to the New Jersey Public Employment Relations Commission (PERC) for binding arbitration. An arbitrator was selected and directed to decide whether the Township appropriately calculated Sergeant Daniel Gorman's vacation and sick leave payouts in accordance with the CNA, Township handbook, and/or past practices.

In January 2017, the arbitrator conducted a hearing in the matter. Thereafter, the arbitrator issued a written decision denying the grievance. The arbitrator found the CNA did not explicitly address the manner in which vacation leave is accumulated in the last year of employment. The arbitrator noted that for many years, members of the PBA bargaining unit had received a full allotment of annual vacation leave in the final year of employment, even

7

though the employee retired before the end of the calendar year. The arbitrator found that the Township had changed that policy on January 15, 2015, when it issued the Handbook, and thereafter applied its new policy to Kopf and Coughlin. The PBA did not object to the change, and it did not file any grievances for the employees whose vacation leave payouts were affected by the change.

The arbitrator also found that the CNA was ambiguous and did not expressly require the Township to calculate sick leave payouts for retirees in accordance with its past practice. The arbitrator observed that in 2015, the Township had changed the manner in which it calculates payouts and applied that change to Kopf, Coughlin, and Styskal. The arbitrator noted that the PBA did not object to the sick leave payouts for these employees.

The arbitrator concluded that the Township had appropriately calculated Gorman's retirement payments for vacation and unused sick leave. The arbitrator found that when Gorman retired in 2016, the Township's past practices of calculating these payments were no longer in effect. The arbitrator also found the Township had consistently followed its new policies without any objection from the PBA.

In October 2017, the PBA filed a complaint in the Law Division seeking an order vacating the arbitration award. The Township filed an answer and sought an order confirming the award. In February 2018, after hearing oral arguments, the Law Division judge placed an oral decision on the record.

The judge decided that the award must be vacated pursuant to N.J.S.A. 2A:24-8(a) because the award had been procured by "undue means." The judge determined that the arbitrator made a mistake of law in failing to apply the Township's past practices for calculating Gorman's vacation and sick leave payouts. The judge found that the Township's past practices had become part of the CNA, and any change in those practices was subject to good faith negotiations. The judge determined that the Township had not shown that the PBA waived such negotiations by acquiescing in the changes to the past practices.

The judge entered an order dated February 21, 2017, which vacated the award and ordered the Township to pay Gorman $14,185.61, which is the difference between the amount Gorman claimed and the amount the Township had already paid him for terminal vacation and sick leave. This appeal followed.

III.

On appeal, the Township argues that the trial court erred by setting aside the arbitrator's award. The Township contends the award was based on a reasonably debatable interpretation of the CNA, and the arbitrator did not exceed his power in issuing the award. The Township further argues that the arbitration award was based on past practices that the Township had abrogated and the PBA had acquiesced in the change. The Township therefore contends that the award was not procured by "undue means." In addition, the Township contends the award does not violate public policy.

We review a trial court's decision to affirm or vacate an arbitration award de novo. Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010). "An arbitrator's award 'is entitled to a presumption of validity and the party opposing confirmation ha[s] the burden of establishing that the award should be vacated pursuant to N.J.S.A. 2A:24-8.'" Twp. of Wyckoff v. PBA Local 261, 409 N.J. Super. 344, 354 (App. Div. 2009) (alteration in original) (citing Jersey City Educ. Ass'n v. Bd. of Educ. of Jersey City, 218 N.J. Super 177, 187 (App. Div. 1987)).

N.J.S.A. 2A:24-8 provides that an arbitrator's award shall be vacated in any of the following circumstances:

10

a.  Where the award was procured by corruption, fraud or undue means;

b.  Where there was either evident partiality or corruption in the arbitrators, or any thereof;

c.  Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;

d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.

"'Undue means' [under N.J.S.A. 2A:24-8(a)] ordinarily encompasses a situation in which the arbitrator has made an acknowledged mistake of fact or law or a mistake that is apparent on the face of the record[.]"  Borough of East Rutherford v. East Rutherford PBA Local 275, 213 N.J. 190, 203 (2013) (quoting State, Office of Emp. Relations v. Commc'ns Workers of Am., 154 N.J. 98, 111-12 (1998)).  Furthermore, in a public sector arbitration, "[a] court may also vacate an award if it is contrary to existing law or public policy."  State, Dept. of Corrs. v. Int'l Fed'n of Prof'l & Tech. Eng'rs, Local 195, 169 N.J. 505, 514 (2001) (citing State, Office of Emp. Relations, 154 N.J. at 112; S. Plainfield Bd. of Educ. v. S. Plainfield Educ. Ass'n ex rel. English, 320 N.J. Super. 281, 288 (App. Div. 1999)).

The court's role "in reviewing [an] arbitration award[] is extremely limited and an arbitrator's award is not to be set aside lightly." Int'l Fed'n, 169 N.J. at 518 (citing Kearny PBA Local # 21 v. Town of Kearny, 81 N.J. 208, 221 (1979)). "[I]n public sector arbitration, [a] court[] will accept an arbitrator's award so long as the award is 'reasonably debatable.'" N.J. Tpk. Auth. v. Local 196, I.F.P.T.E., 190 N.J. 283, 292 (2007) (citing Bd. of Educ. of Alpha v. Alpha Educ. Ass'n., 188 N.J. 595, 603 (2006)). "A . . . court may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's interpretation." N.J. Transit Bus Operations, Inc. v. Amalgamated Transit Union, 187 N.J. 546, 554 (2006) (citing Int'l Fed'n, 169 N.J. at 514).

Here, the record supports the trial court's determination to set aside the award pursuant to N.J.S.A. 2A:24-8(a) because the award was procured by "undue means." The court correctly determined that the arbitrator's interpretation and application of the CNA represented a clear mistake of law and was not reasonably debatable. As we have explained, the CNA does not address how an employee's vacation leave is to be calculated if the employee retires or is separated before the end of the calendar year. In addition, the CNA explains the factors that will be used to determine the amount of a retiring employee's

unused sick leave, but does not detail the specific manner in which that calculation will be made.

It is undisputed that prior to January 15, 2015, the Township had a long-standing practice for paying employees the full allotment of vacation leave in the last year of employment, regardless of when the employee left employment. Moreover, the Township had a long-standing practice for calculating the sick leave payouts for employees who retire. It also is undisputed that in January 2015, the Township changed both practices and applied its new policies when deciding the amounts it paid Gorman for terminal vacation and sick leave.

N.J.S.A. 34:13A-5.4(d) requires the public entity to engage in good faith negotiations before changing a policy or past practice on a matter within the scope of negotiations. It is undisputed that the terminal payments for vacation and sick leave are matters within the scope of negotiations. A bargaining representative may waive the right to negotiate, but the waiver "must be clear and unmistakable.'" City of Jersey City v. Jersey City Police Officers Benevolent Ass'n, 154 N.J. 555, 577 (1998) (quoting In re North Arlington Bd. of Educ., H.E. No. 97-18, 23 N.J.P.E.R. ¶ 28077, 1997 N.J. PERC LEXIS 282 at 17-18 (1997)).

In January 2015, the Township changed its past practices regarding the calculation of vacation and sick leave for retiring employees. The Township did not, however, engage in negotiations with the PBA on the changes. Moreover, neither party sought a determination by PERC that the matter was not subject to negotiations under N.J.S.A. 34:13A-5.4(d). See City of Jersey City, 154 N.J. at 567-68 (noting that PERC has "the power and duty" under N.J.S.A. 34:13A-5.4(d) to determine if a matter in dispute is within the scope of negotiations). Rather, the parties agreed to submit the matter for a decision by an arbitrator.

The record supports the trial court's determination that the arbitrator made a mistake of law which was apparent on the face of the record. As noted, the arbitrator found that the Township validly implemented the change in calculating the vacation and sick leave payouts because it applied the change to employees who retired in 2015. The trial court correctly determined that the arbitrator erred by finding this evidence was sufficient to show that the PBA acquiesced in altering its long-standing practices.

As we have explained, the CNA did not expressly address the manner in which vacation leave is calculated for a worker's last year of employment, but the Township's past practice of allocating a full year of vacation time to such employees was well established. In 2015, the Township applied its new policy

to two members of the PBA bargaining unit who retired, Kopf and Coughlin, without any objection by the PBA. The record supports the trial court's determination that by failing to object to the payments to these two employees, the PBA had not clearly and unmistakenly waived its right to negotiate the change in the calculation of vacation leave in the final year of employment.

In addition, the CNA did not expressly detail the manner in which the Township would calculate a retiring employee's sick leave payout. However, the Township's past practice had been to calculate the payout by first determining the employee's total number of hours of unused sick time, subtracting one-half of the hours of the employee's used personal sick leave, and then applying the employee's salary to half of the remainder.

As noted previously, in 2015 the Township implemented a new policy of calculating sick leave payouts, and the Township applied the new policy to three members of the PBA bargaining unit who retired in 2015, without objection by the PBA. The record supports the trial court's determination that the Township failed to show that the PBA's failure to object to these three payments constituted a clear and unmistakable waiver of its right to negotiate the change in the manner in which the Township calculates sick leave payouts.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3228-17T4