**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4611-17T3

BOUND BROOK EDUCATION
ASSOCIATION,

     Plaintiff-Appellant,

v.

BOUND BROOK BOARD OF
EDUCATION,

     Defendant-Respondent.

Argued May 1, 2019 – Decided May 23, 2019

Before Judges Koblitz, Currier, and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-0337-18.

Sanford R. Oxfeld argued the cause for appellant (Oxfeld Cohen, PC, attorneys; William P. Hannan, II, of counsel and on the brief).

Robert J. Merryman argued the cause for respondent (Apruzzese, McDermott, Mastro & Murphy, PC, attorneys; Robert J. Merryman, of counsel and on the brief; Boris Shapiro, on the brief).

PER CURIAM

Plaintiff Bound Brook Education Association appeals from the May 2, 2018 order, denying its order to show cause to vacate an arbitration award, and dismissing its complaint. Because plaintiff has not demonstrated any of the limited statutory grounds under N.J.S.A. 2A:24–8 to vacate an arbitration award, we affirm.

Plaintiff is an association that represents the Bound Brook school teachers. The collective negotiated agreement (CNA) between the parties, in effect at the time of these events, contained the following provision:

> Starting in the 2015-16 school year, certificated staff/pupil contact time at all elementary levels shall begin 10 minutes after the official reporting time of the certificated staff. No certificated staff shall be required to report prior to 8:00 A.M. The 10 minute time period in the morning shall be guaranteed prep time and is in addition to the 210 (K-5) and the 115 (pre-K) guaranteed prep time stipulated in D.(3)(a) and D.(3)(b) above. <u>The additional thirty-five (35) minute time period at the end of the school day shall not be used for additional assignments or duties</u>. Staff may, however, choose to use this time for extra student help. . . . Whenever the elementary staff is required to remain for meetings following student dismissal, said meetings are expected to start within approximately ten minutes of the student dismissal and will not exceed 60 minutes.
>
> [Article 12(D)(5) (emphasis added).]

A-4611-17T3

The workday for elementary school teachers began at 8:00 a.m. and ended at 3:15 p.m. The students arrived at 8:10 a.m. and were dismissed at 2:40 p.m.

In September 2016, defendant Bound Brook Board of Education (the BOE) implemented mandatory weekly team planning meetings for elementary school teachers on Tuesdays from 2:45 p.m. to 3:15 p.m.

Because plaintiff considered these weekly meetings to be an assignment or duty, and, therefore, a violation of the CNA, it presented the superintendent of schools with a written grievance, which was subsequently submitted to arbitration as required under CNA Article 4(C).

The parties agreed that the issue before the arbitrator was whether "the District violate[d] Section II, Article 12, D(5), by requiring elementary school teachers to attend weekly team planning meetings after student dismissal[.] If so, what shall be the remedy?"

Following a hearing before the arbitrator, the parties submitted supplemental briefs. Thereafter, the arbitrator issued a comprehensive written decision, concluding that the mandatory meetings did not violate the CNA.

In reaching this determination, the arbitrator noted the meeting requirement did not extend the teachers' workday, did not increase the teachers' pupil contact time, and did not reduce the teachers' contractual preparation time.

In addressing the last sentence of Article 12(D)(5), the arbitrator noted the reference was to a full staff meeting, not the smaller weekly planning meetings at issue. In addition, that final clause did "not give any indication that meetings are addressed as a duty or an assignment."

To ascertain the definition of "duty or assignment," the arbitrator examined other provisions within the CNA. He noted specifically Article 12(A)(3) (explaining "traditionally assigned duties" include club sponsorship and supervision of dances); Article 12(B)(1)(a) (discussing high school teachers' assignments and duties schedules); Article 12(B)(1)(f) (limiting the number of high school teacher assignments); Article 12(C)(1) (explaining teachers shall receive written notice for assignments); and Article 12(B)(1)(g) (limiting class coverage assignments).

After reviewing these provisions, the arbitrator found "the team planning meetings [did] not constitute an assignment or a duty within the plain meaning of the contract," reasoning that "the contractual context" of assignments and duties all "involve[d] teacher-pupil contact time" with "instructional or non-instructional supervision." He viewed the "teacher-student contact time" as a "key factor" in determining the intent of the parties. In reading the entirety of Article 12(D)(5), the arbitrator found the statement "[s]taff may . . . choose to

4

use this time for extra student help," was significant as it reflected "the time was not designated as teacher-student contact time." Because "[t]he contract language itself strongly support[ed] the interpretation that the team planning meetings [were] not assignments or duties as contemplated by Article 12, D(5)" the arbitrator found defendant did not violate the CNA.

Consequently, plaintiff presented a verified complaint and an order to show cause, seeking to have the arbitration award vacated. After oral argument, the trial judge denied plaintiff's application. The judge explained that under N.J.S.A. 2A:24–8, arbitration awards are only vacated in limited circumstances, such as when an award is "procured by corruption, fraud, or undue means." The judge stated "the arbitrator . . . took the time . . . to really analyze the terms of the contract . . . as negotiated and came up with a decision that was well reasoned." Thus, she found no reason to vacate the arbitration decision. The oral decision was memorialized in a May 2, 2018 order.

On appeal, plaintiff asserts the trial court erred because: 1) the arbitrator exceeded his authority in finding the meetings did not violate the CNA as Article 12(D)(5) is clear and unambiguous; and 2) the arbitrator's award is contrary to other decisions of the Public Employment Relations Commission (PERC or Commission). We are not persuaded by these contentions and affirm.

A-4611-17T3

We review a trial court's decision on a motion to vacate an arbitration award de novo. See Yarborough v. State Operated Sch. Dist. of Newark, 455 N.J. Super. 136, 139 (App. Div. 2018) (citing Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013)). However, "[j]udicial review of an arbitration award is very limited." Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017) (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010)). "The public policy of this [s]tate favors arbitration as a means of settling disputes that otherwise would be litigated in a court." Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 556 (2015) (citing Cty. Coll. of Morris Staff Ass'n v. Cty. Coll. of Morris, 100 N.J. 383, 390 (1985)). "[T]o ensure finality, as well as to secure arbitration's speedy and inexpensive nature, there exists a strong preference for judicial confirmation of arbitration awards." Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 201 (2013) (alteration in original) (citation omitted).

We apply "an extremely deferential review when a party to a collective bargaining agreement has sought to vacate an arbitrator's award." Policemen's Benevolent Ass'n, Local No. 11 v. City of Trenton, 205 N.J. 422, 428 (2011). "In the public sector, an arbitrator's award will be confirmed 'so long as the award is reasonably debatable.'" Linden Bd. of Educ., 202 N.J. at 276 (quoting

Middletown Twp. PBA Local 124 v. Twp. of Middletown, 193 N.J. 1, 11 (2007)). An award is "reasonably debatable" if it is "justifiable" or "fully supportable in the record." Policemen's Benevolent Ass'n, 205 N.J. at 431 (quoting Kearny PBA Local No. 21 v. Town of Kearny, 81 N.J. 208, 223–24 (1979)).

Under this standard, we "may not substitute [our] judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's interpretation." Linden Bd. of Educ., 202 N.J. at 277 (quoting N.J. Transit Bus Operations, Inc. v. Amalgamated Transit Union, 187 N.J. 546, 554 (2006)).

N.J.S.A. 2A:24–8 provides the limited statutory grounds on which a court may vacate an arbitration award. Here, plaintiff contends the award was procured by "undue means" and the arbitrator exceeded his powers. N.J.S.A. 2A:24–8(a), (d). It is a plaintiff's burden to establish the statutory grounds. Twp. of Wyckoff v. PBA Local 261, 409 N.J. Super. 344, 354 (2009). In addition, a court reviewing an arbitrator's interpretation of a public sector contract must also ascertain whether the arbitration award violates law or public policy. See Borough of E. Rutherford, 213 N.J. at 202–23.

To satisfy the statutory ground of "undue means," plaintiff must demonstrate the arbitrator made "an acknowledged mistake of fact or law or a

mistake that is apparent on the face of the record." Id. at 203 (quoting N.J. Office of Emp. Relations v. Commc'ns Workers of Am., 154 N.J. 98, 111–12 (1998)). To find undue means,

> the arbitrator[] must have clearly intended to decide according to law, must have clearly mistaken the legal rule, and that mistake must appear on the face of the award. In addition, the error, to be fatal, must result in a failure of intent or be so gross as to suggest fraud or misconduct.
>
> [Tretina Printing, Inc. v. Fitzpatrick & Assocs., 135 N.J. 349, 357 (1994) (citation omitted).]

Plaintiff argues the arbitrator's award was contrary to PERC precedent. We note that PERC's role is to make a threshold determination of whether the disputed matter is something the parties can legally negotiate and submit to arbitration. N.J.S.A. 34:13A–5.4(d). PERC may not interpret contracts as contractual interpretation is for an arbitrator. See Bd. of Educ. of Vocational Sch. in Camden Cty. v. CAM/VOC Teachers Ass'n, 183 N.J. Super. 206, 211 (App. Div. 1982) (citing Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 154 (1978)).

The PERC decisions cited by plaintiff are factually distinguishable from this matter and do not support a finding of undue means. In one case relied upon by plaintiff, the district's board of education imposed two monthly meetings

during unstructured preparation periods. In re Maywood Bd. of Educ., P.E.R.C. No. 87-10, 12 N.J.P.E.R. ¶ 17245, 1986 N.J. PERC LEXIS 453 (1986). The Commission found the action violated the CNA because "[w]orkload and preparation time are mandatory subjects of negotiation." In re Maywood Bd. of Educ., P.E.R.C. No. 87-110, 13 N.J.P.E.R. ¶ 18111, 1987 N.J. PERC LEXIS 241 at 5 (1987). Therefore, a unilateral increase in workload and a decrease in preparation time violated the parties' agreement. Ibid. The Commission stated further, "We hold only that the Board may not unilaterally increase workload by decreasing the amount of contractually-agreed preparation time and replacing that time with required attendance at staff meetings." Id. at 6 fn. 4.

Similarly, where a board of education unilaterally added an additional period, increasing both the teachers' workday, and teacher-pupil contact time, the Commission determined the action violated the CNA. See In re Dover Bd. of Educ., P.E.R.C. No. 81-23, 7 N.J.P.E.R. ¶ 12025, 1981 N.J. PERC LEXIS 205 (1981).

Here, the arbitrator found the unnegotiated weekly meeting did not extend the teachers' workday, increase the teacher-pupil contact time, or reduce the teachers' contractual preparation time. Plaintiff has not shown the arbitrator exercised undue means or that his determination was contrary to established law.

We are also unconvinced by plaintiff's argument that the arbitrator "exceeded his authority by failing to apply the relevant CNA language as written." It is well established that an arbitrator exceeds his authority where he ignores "the clear and unambiguous language of the agreement." City Ass'n of Supervisors & Adm'rs v. State Operated Sch. Dist. of City of Newark, 311 N.J. Super. 300, 312 (App. Div. 1998). "[A]n arbitrator may not disregard the terms of the parties' agreement, nor may he rewrite the contract for the parties." Cty. Coll. of Morris, 100 N.J. at 391 (citations omitted).

"Although arbitrators may not look beyond the four corners of a contract to alter unambiguous language, where a term is not defined, it may be necessary for an 'arbitrator to fill in the gap and give meaning to that term.'" Policemen's Benevolent Ass'n, 205 N.J. at 430 (quoting Linden Bd. of Educ., 202 N.J. at 277); see also Local No. 153, Office & Prof'l Emps. Int'l Union v. Trust Co. of N.J., 105 N.J. 442, 452 (1987) ("It is the arbitrator's role to fill the gaps and it is the arbitrator's construction that is bargained for in the collective bargaining process."). "Furthermore, an arbitrator may 'weav[e] together' all those provisions that bear on the relevant question in coming to a final conclusion." Policemen's Benevolent Ass'n, 205 N.J. at 430 (alteration in original) (quoting Amalgamated Transit Union, 187 N.J. at 555). "When that occurs, even if the

arbitrator's decision appears to conflict with the direct language of one clause of an agreement, so long as the contract, as a whole, supports the arbitrator's interpretation, the award will be upheld." Ibid.; see also Borough of E. Rutherford, 213 N.J. at 202 (explaining the interpretation of a CNA is bargained for and is a question for the arbitrator, not the courts).

Here, the parties disputed whether the weekly meetings constituted a "duty" or an "assignment." Because those terms were not defined in the CNA, the arbitrator examined the entire agreement to see how the terms were used and to ascertain their meaning. In determining the CNA's plain language did not classify planning meetings as either an assignment or a duty, the arbitrator properly "weav[ed] together" multiple provisions referencing those terms. Policemen's Benevolent Ass'n, 205 N.J. at 430 (citation omitted). It is clear from the arbitrator's written decision that he considered the CNA "as a whole." Ibid.

Therefore, we are satisfied the arbitrator did not exceed his authority because the award did not add terms to the CNA, but rather drew "its essence from the collective [negotiations] agreement." Id. at 429 (internal quotation marks omitted); see also Amalgamated Transit Union, 187 N.J. at 555 (finding "the arbitrator's weaving together of the numerous provisions that bore on the

compensation issues before him was certainly reasonable"). We discern no reason to disturb the trial court's ruling.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4611-17T3