924 A.2d 602 (2007)
393 N.J. Super. 509
John HOGOBOOM, Plaintiff-Respondent/Cross-Appellant,
v.
Kelly HOGOBOOM (N/K/A GRIMSLEY), Defendant-Appellant/Cross-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 7, 2007.
Decided June 14, 2007.
Bonnie C. Frost, Denville, argued the cause for appellant/cross-respondent (Einhorn, Harris, Ascher, Barbarito, Frost & Ironson, attorneys; Ms. Frost, on the brief).
Neil S. Braun, Springfield, argued the cause for respondent/cross-appellant *603 (Gomperts & Braun, attorneys; Mr. Braun, of counsel and on the brief).
Before Judges WEFING, C.S. FISHER and MESSANO.
The opinion of the court was delivered by
WEFING, P.J.A.D.
The parties appeal and cross-appeal from post-judgment orders entered by the trial court on December 20, 2005 and January 17, 2006. After reviewing the record in light of the contentions advanced on appeal, we reverse.
The parties were married in October 1988 and divorced pursuant to a judgment of divorce entered in July 1999. During the course of their marriage, the couple had four children, who now range in age from fourteen to nine. In conjunction with the divorce proceedings, the parties engaged in mediation which resulted in a comprehensive property settlement agreement. Under that agreement plaintiff agreed to pay child support of $2,405 per month and alimony of $5,100 per month. The agreement provided for a modification of those sums upon the sale of the marital residence; following that sale, plaintiff paid to defendant $56,000 per year in alimony and $26,000 per year in child support. After setting forth the formula by which that modification was to be calculated, the agreement stated, "Any subsequent change in Kelly's housing arrangements will not result in any further adjustment, upwards or downwards, in these [alimony and child support] payments."
The agreement contained the following provision with regard to plaintiff's obligation to pay alimony:
Alimony will terminate upon: (i) Kelly's death; (ii) Kelly's remarriage; or (iii) the youngest surviving child's graduation from high school or emancipation, as defined herein, whichever first occurs. Alimony will be subject to modification as otherwise prescribed by law. The parties have specifically structured alimony to terminate upon the youngest surviving child's graduation from high school or emancipation, whichever first occurs, not as a substitute for child support, but because Kelly's ability to earn her own income will markedly increase and her consequent need for alimony will decrease when she no longer has primary responsibility for caring for any of the parties' four Children. Alimony will also be reduced if and when Kelly's earned income exceeds $40,000 per annum, with the reduction being in the amount of $.30 (thirty cents) for every $1.00 Kelly earns over $40,000. Kelly will be responsible to notify Jack when her income exceeds the aforesaid $40,000 per annum and Jack may request a copy of Kelly's tax return each year in order to implement this provision.
According to the record before us, defendant's income has never reached the $40,000 threshold. Plaintiff, on the other hand, is a partner in a major law firm. According to the financial information contained in the record before us, plaintiff was earning nearly $400,000 when the current dispute developed.
The agreement further provided that the parties would "renegotiate child support based on both parties' then current incomes every two years after [the modification based upon sale of the marital residence]." According to the record before us, the parties made no effort to renegotiate child support until the events which gave rise to the present dispute.
Following their divorce, each of the parties formed a new relationship. Plaintiff has remarried, while defendant has not. *604 Defendant's boyfriend, however, moved into defendant's new residence in August 2003. In October 2003, plaintiff approached defendant about modifying his financial obligations, but the parties were unable to come to an agreement. In April 2004 plaintiff filed a motion seeking to terminate his obligation to pay alimony based upon defendant's cohabitation with her boyfriend, to modify his child support obligation, and for an increase in parenting time. Defendant filed a cross-motion seeking an increase in plaintiff's payments.
The parties determined not to litigate their disputes but, rather, to submit them to arbitration, and they selected a retired Superior Court judge to serve as arbitrator. Thereafter, they signed an arbitration agreement, drafted by the arbitrator. This agreement included the following provisions pertinent to the appeal before us:
2. Substantive Law, Statutes Governing Arbitration, Rules of Arbitration Applicable. Except as herein otherwise provided, the parties shall be bound by the substantive laws of the State of New Jersey with regard to the subjects raised by the issues in this arbitration.
The arbitration shall proceed in accordance with N.J.S.A. 2A:24-1 et seq.[1] The provisions of this Agreement shall govern in case of conflict with said laws and Rules to the extent not illegal, void, or inconsistent with public policy.
The parties agree that any decision of the Arbitrator can be appealed on the same basis as an Order or Judgment of the Superior Court.
. . . .
12. Arbitration Award. Upon completion of the hearing, the Arbitrator will issue an arbitration Award in writing, and deliver a copy of said Award to each party as soon as practicable following the completion of proceedings. Said arbitration award shall be deemed final and binding upon both parties, except to the extent inconsistent with New Jersey law applicable to said arbitration. The parties acknowledge that there are limited rights to change, modify, correct or appeal an arbitration award, and those rights are governed by the Rules and law applicable to said arbitration.
13. Post-Arbitration Proceedings Before the Arbitrator. Either party may make such application to the Arbitrator relative to the arbitration award as is provided in paragraph 12 of the Rules, which rule shall govern such applications except as modified hereby. Such an application may be presented by letter from the moving party which letter shall specifically set forth the relief being sought and the factual and legal basis therefor, supported by such certification and/or documentation (governed by R. 1:6-6) as is deemed appropriate. Any response may include a cross-application, and any reply shall be filed and served within 10 days thereafter. No other submission shall be allowed except on leave of the Arbitrat[or]. The mode and timing of resolution thereof shall be determined by the Arbitrator.
14. Confirmation Proceedings and Other Judicial Applications. An application for confirmation of the arbitration award and/or any other application to any court of competent jurisdiction shall be made within 20 days of the date of the arbitration award by the party so designated by the Arbitrator in the *605 award or any amendment thereto. An application to the Arbitrator under paragraph 13 hereof shall toll the time required for the confirmation application.
The arbitrator conducted three days of hearings. At the outset of the first hearing, the arbitrator made the following statement to the parties and counsel:
Unlike statutory arbitration, which is appealable only on grounds of fraud or other misconduct, the parties have agreed that my decision will be appealable by either party. I am required to follow applicable statutory and case law.[2]
After three days of hearings, the arbitrator issued two awardsone on December 2, 2005, dealing with parenting time and one on December 27, 2005, dealing with alimony and child support. In this latter award, the arbitrator determined that plaintiff's obligation to pay alimony ceased as of August 15, 2003, when defendant's boyfriend took up residence in the household. He increased child support to $895 per week, also retroactive to August 15, 2003. He awarded plaintiff a credit of $63,288.03 for past alimony, together with a lien on defendant's house for that amount, and interest of 4% for any amount not paid by January 1, 2006. Defendant was awarded a counsel fee of $11,000 and the arbitration fee of $26,191 and costs of $2,290 were divided, with 75% allocated to plaintiff, 25% to defendant. Following these awards, the arbitrator issued a series of supplementary letters explaining how he came to these results.
On December 20, 2005, the trial court entered an order incorporating the arbitrator's award as to parenting time, and on January 17, 2006, the trial court entered an order incorporating the arbitrator's award with respect to alimony and child support. The record before us contains no indication that the trial court made any findings with respect to these awards. Indeed the orders themselves are identical in every way to the arbitrator's awards, even to the point of repeating the erroneous use of the word "proscribed" when "prescribed" was clearly intended. It is from those orders that the parties have appealed to us.
The parties in their submissions to us have focused on the merits of the arbitrator's awards incorporated in the trial court's orders. Defendant has pressed her view that the arbitrator's awards were not based on credible facts but were intended to punish her for cohabitation. She maintains that the awards do not permit the children to have a comparable lifestyle and were made without regard to the tax consequences. She has also alleged a personal relationship between plaintiff's attorney and the arbitrator which, she contends, tainted the awards. Plaintiff, on the other hand, contends that the awards are correct insofar as alimony is concerned but that the arbitrator made various errors with respect to child support and counsel fees. Despite the parties' extensive briefings, we are satisfied that the substantive merits are not properly before us, and we, therefore, decline to address them.
N.J.S.A. 2A:23B-23 and -24 state the grounds upon which an arbitration award may be vacated or modified. N.J.S.A. 2A:23B-23 provides six grounds upon which an arbitration award may be vacated: it was "procured by corruption, fraud, or other undue means;" evident corruption, *606 partiality or misconduct by the arbitrator; the arbitrator refused to postpone a hearing or consider evidence, to the substantial prejudice of a party; the award exceeded the arbitrator's powers; there was no agreement to arbitrate; or the arbitration proceeded without proper notice, to the substantial prejudice of a party. N.J.S.A. 2A:23B-24 provides three grounds upon which an arbitration award may be modified: an evident mathematical miscalculation or other evident mistake; the award includes a claim not within the scope of the arbitration; or the award is "imperfect in a matter of form not affecting the merits."
Unlike the predecessor arbitration statute, however, the new statute specifically provides that the parties may "expand[ ] the scope of judicial review of an award by expressly providing for such expansion." N.J.S.A. 2A:23B-4(c). This language was included in the statute to incorporate the principles enunciated in Tretina Printing, Inc. v. Fitzpatrick & Associates, Inc., 135 N.J. 349, 358, 640 A.2d 788 (1994). N.J.S.A. 2A:23B Assembly Judiciary Committee Statement.
In Tretina, the Court adopted the language of then-Chief Justice Wilentz in his concurring opinion in Perini v. Greate Bay Hotel & Casino, Inc., 129 N.J. 479, 548-49, 610 A.2d 364 (1992):
Basically, arbitration awards may be vacated only for fraud, corruption, or similar wrongdoing on the part of the arbitrators. [They] can be corrected or modified only for very specifically defined mistakes as set forth in [N.J.S.A. 2A:24-9]. If the arbitrators decide a matter not even submitted to them, that matter can be excluded from the award. For those who think the parties are entitled to a greater share of justice, and that such justice exists only in the care of the court, I would hold that the parties are free to expand the scope of judicial review by providing for such expansion in their contract; that they may, for example, specifically provide that the arbitrators shall render their decision only in conformance with New Jersey law, and that such awards may be reversed either for mere errors of New Jersey law, substantial errors, or gross errors of New Jersey law and define therein what they mean by that.
See Mt. Hope Dev. Assoc. v. Mt. Hope Waterpower, 154 N.J. 141, 149, 712 A.2d 180 (1998) (noting that parties agreeing to proceed under the Alternative Procedure for Dispute Resolution Act, N.J.S.A. 2A:23A-1 to -19 may, by contract, preserve a right of appeal). Here, the parties afforded themselves an expanded scope of review, as they were, by contract and by statute, permitted to do.
The parties were not, however, entitled to create an avenue of direct appeal to this court. Our jurisdiction is defined in R. 2:2-3, and we have consistently declined to permit parties to enlarge that jurisdiction. D'Oliviera v. Micol, 321 N.J.Super. 637, 729 A.2d 1084 (App.Div.1999). It is settled that consent of the parties does not create appellate jurisdiction. Hudson v. Hudson, 36 N.J. 549, 553, 178 A.2d 202 (1962).
In our judgment, the parties must seek initial review of these awards in the trial court. The trial court is charged with employing the standard of review the parties contractually agreed upon in determining whether these awards, or either of them, should be vacated or modified. Indeed, one of the issues raised by defendant before us demonstrates why that initial review cannot take place before this court.
Defendant argues that a personal relationship existed between plaintiff's counsel and the arbitrator that tainted the proceedings. Plaintiff's counsel denies that such existed. The parties have presented conflicting factual assertions and made *607 representations to this court in oral argument. There is, however, no record for us to review in this regard and we are, quite simply, in no position to decide the issue.
We have considered the impact, if any, of the parties' failure to address before the trial court the substantive merits of the arbitrator's awards. Specifically, we have considered whether we should deem that failure to be a conclusive waiver. We have, however, rejected that result. It is apparent to us that the parties proceeded in good faith in the view that they would have the right to raise before us their various objections to the awards, and there was no reported decision which would have advised the parties that their view was incorrect. In such a posture, we would consider it fundamentally unfair to deprive the parties of the opportunity to present their various arguments. Those arguments and challenges, however, must be presented in the first instance to the trial court.
Accordingly, we reverse the orders under review and remand this matter to the trial court for further proceedings in accordance with this opinion. We do not retain jurisdiction.
Reversed and remanded.
NOTES
[1] The reference to N.J.S.A. 2A:24-1 et seq. is erroneous. The arbitration agreement was entered in November 2004, by which time that statute had been superseded by N.J.S.A. 2A:23B-1 to -32. N.J.S.A. 2A:23B-3(a) provides that "[t]his act governs all agreements to arbitrate made on or after January 1, 2003."
[2] We note in this regard the following language from the agreement to arbitrate: "The actions of the Arbitrator shall be governed by the provisions of this Agreement and the law of the State of New Jersey. However, the Arbitrator, in his discretion, may deviate from or relax said substantive law in the interests of arriving at a just and equitable resolution of the issues in controversy. . . ."