**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2131-17T2

N.M.,

     Plaintiff-Respondent,

v.

J.M.,

     Defendant-Appellant.

_____

Submitted March 11, 2019 – Decided April 29, 2019

Before Judges Messano and Gooden Brown.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-0150-15.

Einhorn, Harris, Ascher, Barbarito & Frost, PC, attorneys for appellant (Bonnie C. Frost, of counsel and on the briefs; Kristi L. Terranova, on the brief).

Laufer, Dalena, Jensen & Bradley, LLC, attorneys for respondent (James C. Jensen, of counsel; Gregory D. R. Behringer, on the brief).

PER CURIAM

In this matrimonial matter, defendant (ex-husband) appeals from a December 11, 2017 Family Part order, entering a final judgment of divorce (FJOD). The FJOD incorporated the parties' marital settlement agreement (MSA), addressing issues related to the dissolution of the marriage, and two arbitration orders, dated April 11 and July 26, 2017, pertaining principally to alimony. On October 23, 2017, the trial court entered an order, denying defendant's motion to modify the July 26 arbitration award and granting plaintiff's (ex-wife's) motion to confirm both arbitration awards.

On appeal, defendant raises the following points for our consideration:

> POINT I
>
> THE ARBITRATOR'S REFUSAL TO CONSIDER MATERIAL EVIDENCE, MISCONDUCT[,] AND VIOLATION OF THE PARTIES' ARBITRATION AGREEMENT REQUIRES THIS COURT TO VACATE THE ARBITRATION AWARD PURSUANT TO N.J.S.A. 2A:23B-4([A]), N.J.S.A. 2A:23B-15, [AND] N.J.S.A. 2A:23B-23([A]) (2)-(3)[.]
>
> POINT II
>
> THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S REQUEST TO VACATE THE ARBITRATION AWARD DUE TO THE ARBITRATOR'S VIOLATIONS OF N.J.S.A. 2A:23B-23([A]) AND ARBITRATOR'S FAILURE TO ABIDE BY THE TERMS OF THE PARTIES' ARBITRATION AGREEMENT[.]

We disagree and affirm.

I.

The parties married in 1990. Two children were born of the marriage, a boy born June 1996 and a girl born November 1999. In 2013, the parties separated, and, in 2014, plaintiff filed a complaint for divorce. Following mediation, on January 17, 2017, the parties entered into a MSA addressing equitable distribution, child support, custody, and parenting time. Under the MSA, the parties agreed to submit defendant's obligation to pay alimony "to binding arbitration" before a retired judge (the arbitrator).

On the same date, the parties executed an arbitration agreement in which they acknowledged that "their respective rights [were] limited by th[e] [a]greement" and "the New Jersey Uniform Arbitration Act, N.J.S.A. 2A:23B-1 [to -32]." They specifically agreed that "the [a]rbitrator shall have sole and exclusive jurisdiction to determine all matters" pertaining to "the amount of alimony, the term of alimony[,] or the frequency of alimony."[1] Further, "[t]he

---

[1] In the agreement, "[t]he parties acknowledge[d] that the [a]rbitrator ha[d] previously acted as mediator" but waived "their right[] to confidentiality" and "to object to the . . . [a]rbitrator . . . act[ing] in a dual role." See Minkowitz v. Israeli, 433 N.J. Super. 111, 142 (App. Div. 2013) (holding that "absent the parties' agreement, an arbitrator . . . may not assume the role of mediator and, thereafter, resume the role of arbitrator").

A-2131-17T2

[a]rbitrator shall issue an award" pursuant to "the substantive law of the State of New Jersey" and "based upon a separate written decision setting forth findings of fact and conclusions of law."  They agreed that "[t]he parties may request in writing to have the [a]rbitrator correct, modify[,] or clarify the award pursuant to N.J.S.A. 2A:23B-20[,] and may seek reconsideration based upon the legal grounds set forth in [Rule] 4:49-2."

However,

> [t]he parties . . . agreed that there will be no right of appeal from the [a]rbitrator's award, but that either party may subsequently apply to the Superior Court of New Jersey[,] Chancery Division, Morris County, Family Part, or such other [c]ourt having competent jurisdiction, to seek a modification of any alimony award based upon a change in circumstances.

Further, upon expiration of the times provided in the agreement "to seek correction, modification[,] or vacature[,] . . . either party may move for confirmation of the award," and "[t]he confirmed award shall be incorporated in an [o]rder of the [c]ourt and shall be binding on the parties."  Additionally, the parties agreed to forego making any "stenographic record" of the testimony at

the arbitration proceedings, and "acknowledge[d] that each of them . . . entered into th[e] [a]greement freely, voluntarily[,] and knowingly."[2]

On April 11, 2017, following three days of testimony, the arbitrator issued an award, requiring defendant to pay plaintiff $15,000 per month in open durational alimony, "beginning upon the entry of the [FJOD]," which "[a]limony shall terminate" upon plaintiff's "remarriage" or "cohabitation" or the "death of either party." In addition, the arbitrator ordered defendant to pay to plaintiff "the sum of $10,000 per month" as "a savings component," "retroactive to September 30, 2014," and to "continue for so long as alimony shall be paid." Accompanying the arbitrator's award was a fifteen-page decision, detailing the arbitrator's findings of fact and conclusions of law.[3]

In the decision, initially, the arbitrator noted that plaintiff, then forty-six years old, and defendant, then forty-eight years old, had a twenty-three year

---

[2] The parties and their respective counsel also executed a consent order, filed with the Family Part, memorializing the agreement to arbitrate "without the right of an appeal." The order stated that the Family Part "[did] not retain jurisdiction, except to enter the [FJOD] and . . . for any post-arbitration decision based upon a change of circumstances to modify alimony" or "to confirm any arbitration awar[d]."

[3] The award and decision also addressed other miscellaneous items, specifically health insurance coverage and college contributions for the parties' un-emancipated daughter, payment of outstanding medical expenses for both children, and a furniture adjustment.

A-2131-17T2

marriage.  Recounting the parties' testimony regarding their work experience and income, the arbitrator found that defendant and his brother "took over" their father's business, which "continued to operate at the present time[,]" while plaintiff "was a stay[-]at[-]home mother by agreement" and did not work despite having "an associate[] degree in fashion and marketing" in addition to "a cosmetology license [that] ha[d] long since expired."  Since the separation, plaintiff had "returned to work part[-]time[,] working sixteen . . . hours per week" and earning approximately $300 net monthly.  Although defendant wanted to impute to plaintiff earnings of "$35,000 per year . . . for alimony purposes[,]" the arbitrator noted that plaintiff did "not believe that she would be able to earn that much money."  In addition, plaintiff "[felt] that she should not [have to seek a full-time job] until her daughter [who lived with her] graduate[d] from high school."

The arbitrator's review of the parties' federal income tax returns, from 2011 to 2014, showed that defendant earned a "base salary" of approximately "$460,000 per year plus additional income from investments," totaling $1.9 million in 2012,[4] $1.1 million in 2013, and $1.6 million in 2014.  In the years

---

[4]  In 2012, defendant's salary was $260,000.

prior, specifically 2007, 2008, and 2009, defendant's combined income averaged "in excess of $1 million per year."[5]  The arbitrator noted that "[n]o tax returns for 2015 or 2016 were produced," but in 2014, when the divorce complaint was filed, defendant "decided not to take a distribution, but [instead] retain[ed] the earnings in the business."

Turning to the marital lifestyle, according to the arbitrator, "[t]he parties lived a nice upper middle class lifestyle, flew first[-]class, stayed at expensive hotels, took cruises, four vacations per year," and drove "expensive cars[,]" which they traded-in every two years.  They also paid their monthly "American Express bill[,] keeping it current."  "They purchased a second home in 2000[,] and after expensive and extensive repairs and remodeling," sold it "in 2016 for approximately $700,000."

Because plaintiff was seeking alimony as well as "a savings component," the arbitrator observed that during the "latter years of the marriage," the parties "were able to save substantial amounts of money," generally derived from distributions from defendant's business, which plaintiff then deposited into a wealth management account.  Plaintiff testified that in 2011, 2012, and 2013,

---

[5]  For 2010, the parties' income was over $2 million, and for 2011, their income was over $3.7 million.

she deposited into the wealth management account $1.6 million, $230,000, and $570,000, respectively. However, relying on the testimony of Ilan Hirschfeld, a forensic accountant retained by defendant, defendant contended that "there [would] be no need to have a savings component added to the monthly alimony payments" given plaintiff's investment income from equitable distribution.

Specifically, based on "certain assumptions," including imputing earned annual income of $35,000 to plaintiff, a life expectancy of eighty-one years, retirement at age sixty-eight, and receipt of five percent return on investments, Hirschfeld projected annual income ranges from $60,000 to $100,000, based on "what he felt were or would be the needs of . . . [p]laintiff to age [ninety]." However, plaintiff disputed Hirschfeld's projections, asserting that he "never met her," was not "aware of her needs," her "present situation[,]" or her investment "intentions," "based his report on assumptions not in evidence[,]" and conducted no "analysis" of defendant's "ability . . . to pay her alimony."

In reaching his decision, the arbitrator agreed with defendant regarding imputing to plaintiff an annual income of $35,000 because she "acknowledge[d] that once her daughter begins college[,] . . . she may return to the workforce on a full[-]time basis." However, the arbitrator rejected defendant's reliance on Hirschfeld's projections, which were based on "hypothetical assumptions[,]" and

applied the fourteen factors enumerated in N.J.S.A. 2A:34-23(b), making specific findings for each factor.

Based on "the income and financial information provided during the hearing[,]" as well as the fact that both parties "appear[ed] to be in good health[,]" the arbitrator determined that "[defendant] ha[d] the ability to continue to earn a similar income as he had in the latter part of the marriage." However, plaintiff "[would] not have the ability to earn a substantial income" because she "last worked approximately twenty years ago[,]" and "just returned to work on a part-time basis while [her] daughter [was] in high school."

Noting defendant's "strained" relationship with the parties' daughter, the arbitrator acknowledged that "[defendant] ha[d] been the parent responsible for the financial contribution . . . to the marriage while . . . [plaintiff] was primarily responsible for raising the children." Thus, the arbitrator concluded that defendant "[c]learly . . . ha[d] the ability to pay alimony" and, given that plaintiff had not "worked in over twenty years and was totally dependent upon [defendant,] [t]here [was] no question that she would need alimony."

Regarding the marital lifestyle, applying settled legal principles, the arbitrator acknowledged that both parties were entitled "to maintain the standard of living reasonably comparable to the standard of living established in the

9

marriage . . . with neither party having greater entitlement thereto," see N.J.S.A. 2A:34-23(c), and that alimony was "neither a punishment for the payor," "a reward for the payee[,]" nor "a windfall for either party." See Aronson v. Aronson, 245 N.J. Super. 354, 364 (App. Div. 1991). Instead, "[t]he basic purpose of alimony [was] . . . the continuation of the standard of living enjoyed by the parties prior to the separation." See Innes v. Innes, 117 N.J. 496, 503 (1990).

To that end, based upon the "circumstances of the parties and the nature of the case," including the fact that defendant paid pendente lite "unallocated support in the amount of [$7500] per month[,]" which "was increased" to $10,000 per month "once the marital home was sold[,]" the arbitrator concluded that plaintiff's request for $15,000 per month in alimony was reasonable and appropriate. Further, given the length of the marriage, the arbitrator awarded plaintiff open durational alimony, taxable to plaintiff and tax-deductible to defendant. See N.J.S.A. 2A:34-23(c).

Regarding plaintiff's request for a savings component, relying on Lombardi v. Lombardi, 447 N.J. Super. 26, 39-40 (App. Div. 2016), the arbitrator acknowledged that "where the parties' lifestyle included regular savings[,]" then a savings component, "must be accounted for in support." The

arbitrator found that "[t]he parties . . . continually provide[d] savings during their marriage," and the wealth management account into which the savings were transferred "had a balance in excess of $4 million" when the complaint was filed. The arbitrator determined "there [could] be no doubt that there was a savings component as part of the parties' lifestyle," particularly in the last five years of the marriage, and therefore concluded that "a savings component [was] proper" in this case.

However, he rejected plaintiff's request for $20,000 per month, noting that plaintiff "[did] not take into consideration any income she [would] receive from the equitable distribution assets[,] which in all likelihood would be in excess of $100,000 per year." The arbitrator ordered the monthly savings component "retroactive to September 30, 2014," in accordance with the parties' April 10, 2015 consent order, providing that retroactive savings on a pendente lite basis should be considered if there was a determination that plaintiff was entitled to a savings component.

On April 24, 2017, defendant moved for reconsideration, requesting that the arbitrator "[e]stablish a specific amount for . . . plaintiff's marital lifestyle expenses"; provide a "detailed explanation as to how the amount was determined"; and "determine that . . . plaintiff [was] not in need of a savings

11

component, as . . . supported by . . . Hirschfeld's testimony and report[.]" In the alternative, defendant requested "a specific explanation as to how the [savings component] was determined[,]" a modification of "the amount," or reconsideration of the retroactive portion of the savings component. Defendant also sought clarification on whether the savings component was also tax-deductible for defendant and the circumstances under which the savings component would terminate. In support, defendant annexed a certification prepared by Hirschfeld.

As to plaintiff's lifestyle expenses, defendant urged the arbitrator to conduct a further review of his summation and "reconstructed [CIS] for . . . plaintiff,"[6] which showed that a reasonable alimony award that accurately reflected plaintiff's expenses was approximately $10,000 per month, rather than the $15,000 awarded. As to the parties' savings, defendant asserted that plaintiff was not in need of a savings component and, even if she was, the "regular" savings component of the marriage did not approach the figure awarded by the arbitrator since substantial savings "did not really occur until 2010 and only

---

[6]  According to defendant, his attorney reconstructed plaintiff's expenditures "based upon her testimony" at the arbitration proceedings. However, plaintiff's CIS admitted into evidence at the arbitration proceeding indicated that she was presently spending $15,521 per month exclusive of savings.

occur[red] over a three-year period." Further, in determining what, if any, retroactive savings plaintiff was entitled to, defendant urged the arbitrator to consider that since the separation, plaintiff benefited from the increase in the value of their brokerage accounts for which defendant paid all the taxes.

Plaintiff opposed the motion for reconsideration and cross-moved for counsel fees. Following oral argument, on July 26, 2017, the arbitrator entered two companion orders, ultimately denying defendant's motion, but modifying his initial award to reduce the retroactive savings component to $5000 per month from September 30, 2014, until entry of the FJOD, at which time the $10,000 monthly savings component "shall begin." The July 26 order also clarified that the savings component, like the alimony payments, was tax-deductible for defendant and terminated under the same circumstances as alimony. Additionally, the order granted plaintiff counsel fees in the amount of $2400.

In the accompanying statement of reasons, the arbitrator stated that defendant's motion was basically a "restatement of his position in summation," the Hirschfeld certification was "really no different than his original position," and "[t]he fact that . . . [d]efendant [did] not agree with the expenditures claimed by . . . [p]laintiff [did not] mean that only his conclusions [were] correct." The arbitrator explained that he:

had analyzed [plaintiff's] testimony . . . as well as her CIS and submissions before determining . . . a fair amount of [a]limony to be awarded under the circumstances of this case. The fact that . . . [d]efendant's expert disagreed and arbitrarily challenged [plaintiff's] expenses . . . without ever having spoken to her, does[] [not] mean his conclusions are correct.

To accept the position of . . . [d]efendant that . . . [p]laintiff should not be entitled to a savings component, contrary to what the [c]ourt said in [Lombardi] . . . , would result in [d]efendant clearly having the ability to accumulate substantial savings and [p]laintiff not having the same ability. . . .

However, as to the retroactivity issue, the arbitrator "re-examin[ed] [his] trial notes" and agreed with defendant that he should have considered the "substantial increase in the parties['] brokerage account" of "approximately $253,000[,]" from September 30, 2014, to the time of the arbitration. The arbitrator also agreed that he should have considered the fact that "[d]efendant paid the tax on all the taxable income in the brokerage account" in awarding plaintiff "retroactivity of the full amount of savings." Thus, the arbitrator modified the award accordingly.

On August 16, 2017, defendant moved in the Morris County Superior Court to "[m]odify[] and/or correct[]" the arbitration award to reduce defendant's alimony obligation to "$13,333.33" per month, to eliminate

14

defendant's "obligation to pay any retroactive savings component," and for "counsel fees and costs on th[e] application." In his supporting certification, defendant reiterated the same points presented to the arbitrator in his motion for reconsideration. However, regarding the savings component, defendant stated that "[w]hile [he] believe[d] [it] was excessive, [he] w[ould] not challenge for purposes of th[e] [m]otion the award of $10,000 per month."

Plaintiff opposed the motion and cross-moved to confirm the arbitration award, to schedule an uncontested divorce hearing, and for counsel fees. In her supporting certification, plaintiff explained that "the parties agreed to enter into binding arbitration," "with no right of appeal to the Superior Court or Appellate Division." Since defendant's reconsideration motion resulted in a minor modification of the arbitration award, plaintiff asserted "there [were] no further appeals or right to challenge [the arbitrator's] binding arbitration award." Defendant countered that "plaintiff mischaracterize[d] . . . [his] [m]otion as an appeal" instead of "an application pursuant to [N.J.S.A. 2A:23B-24(a)(1)] to modify or correct an arbitration award where there has been an evident mathematical miscalculation."

In an October 23, 2017 order, the motion judge denied defendant's motion and confirmed the arbitrator's April 11 and July 26, 2017 decisions. In the

15

statement of reasons accompanying the order, the judge explained that N.J.S.A. 2A:23B-24(a)(1) authorized the court to "modify or correct [an arbitration] award if there was an evident mathematical miscalculation."  However,

> there [was] no evident mathematical miscalculation by the [a]rbitrator.  On the contrary, [d]efendant [was] disputing the arbitrator's calculation of the marital lifestyle.  Defendant has not presented any new information which was not already considered during oral argument on his [m]otion for [r]econsideration of the original April 11, 2017 [a]ward.  He has not proven this was a mere mathematical error.  His request for "modification" of the alimony award is improper as this [c]ourt does not have the judicial authority to "modify" an arbitration award absent certain limited circumstances to vacate an award that are not alleged in this matter.

Regarding plaintiff's motion to confirm the award, the judge explained that because "[n]o application to vacate the [a]rbitration [a]ward [was] pending," "as required by [N.J.S.A.] 2A:23B-24(b), the [a]rbitration [a]ward dated April 11, 2017[,] and its modification on July 26, 2017, w[ere] . . . confirmed and shall govern."  The judge also awarded plaintiff counsel fees and scheduled the matter for an uncontested divorce hearing.[7]  Ultimately, the FJOD, incorporating the

---

[7] At the first hearing conducted on November 30, 2017, defendant challenged the MSA, claiming that the mediator, who later served as the arbitrator, "misled" him.  The judge decided to conduct a hearing pursuant to Harrington v. Harrington, 281 N.J. Super. 39, 47 (App. Div. 1995), to determine whether the

MSA and the arbitration award, were memorialized in a conforming order, and

this appeal followed.[8]

---

MSA should be set aside, and ordered the attorneys to brief "[w]hether a finding that the [MSA] [was] not binding, somehow vacate[d] the arbitration award." When the parties appeared again on December 11, 2017, defendant relented, acknowledging that the MSA was "fair and equitable," but expressed his intention to appeal the arbitration award. After the judge expressed her intention to proceed with the Harrington hearing because "any colloquy or questioning regarding an appeal[] in an uncontested proceeding[] [was] improper," defendant agreed to abide by the arbitration award. Thereafter, the judge made the requisite findings and entered on the record the FJOD, incorporating the MSA and the arbitration award.

[8] After the appeal was filed, the parties' attorneys requested the arbitrator to "settle the factual record" since there was no record of the arbitration hearing. In response, the arbitrator explained that he was unaware "that an appeal had been filed" and his handwritten notes and file had since "been destroyed." However, after reviewing his dictated notes, which his secretary was able to retrieve from the computer, he referred the parties to "the first five pages" of his arbitration decision for a recitation of the "testimony by the witnesses." The arbitrator stated further:

> With regard to the lifestyle of the parties, in addition to what was stated in my decision, my notes reveal more specifically that [plaintiff] went into great detail as to how they lived[,] indicating the trips to Las Vegas, Lake Placid[,] and Hawaii. She further claimed there was never an issue as to cost as there was always money to pay for it. They paid American Express each month, both drove nice cars, such as a Porsche that she drove. She further indicated that they had a cleaning woman at the house once a week . . . costing $130 per week.

17

II.

"The public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court." Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 556 (2015). This "strong public policy" also favors "using arbitration in family litigation[.]" Minkowitz, 433 N.J. Super. at 131-32. However, "[a]rbitration can attain its goal of providing final, speedy[,] and inexpensive settlement of disputes only if judicial interference with the process is minimized; it is, after all, meant to be a substitute for and not a springboard for litigation." Fawzy v. Fawzy, 199 N.J. 456, 468 (2009) (quoting Barcon Assocs. Inc. v. Tri-County Asphalt Corp., 86 N.J. 179, 187 (1981)). To that end, "arbitration should spell litigation's conclusion, rather than its beginning[.]" Borough of East Rutherford v. East Rutherford PBA Local 275, 213 N.J. 190, 201 (2013) (quoting Middletown Twp. PBA Local 124 v. Twp. of Middletown, 193 N.J. 1, 10 (2007)).

Thus, "courts grant arbitration awards considerable deference[,]" ibid., and "when binding arbitration is contracted for by litigants, the judiciary's role to determine the substantive matters subject to arbitration ends." Minkowitz, 433 N.J. Super. at 134.

> From the judiciary's perspective, once parties contract for binding arbitration, all that remains is the possible

need to: enforce orders or subpoena issued by the arbitrator, which have been ignored, N.J.S.A. 2A:23B-17(g); confirm the arbitration award, N.J.S.A. 2A:23B-22; correct or modify an award, N.J.S.A. 2A:23B-24, and in very limited circumstances, vacate an award[,] N.J.S.A. 2A:23B-23. If not for this limitation on judicial intervention of arbitration awards, "the purpose of the arbitration contract . . . would be severely undermined."

[Ibid. (quoting Fawzy, 199 N.J. at 470).]

Here, for the first time on appeal, defendant seeks to vacate the arbitration award on the ground that the arbitrator (1) "engaged in misconduct pursuant to N.J.S.A. 2A:23B-[23(a)(2)]" by failing "to set forth findings of fact and conclusions of law in his decision" as required by "the parties' [a]rbitration [a]greement"; (2) "refused to consider evidence material to the controversy" as required by N.J.S.A. 2A:23B-23(a)(3), thereby "substantially prejudic[ing] [defendant's] rights"; and (3) "knowingly misapplied or disregarded the law." However, "[a] party seeking to vacate an arbitration award must first obtain trial court review of the award." Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010) (citing Hogoboom v. Hogoboom, 393 N.J. Super. 509, 515 (App. Div. 2007)). Moreover, we "will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the

19

trial court or concern matters of great public interest[,]" neither of which apply here. Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)).

Because defendant never sought to vacate the award before the trial court, we construe defendant's challenge to the judge's decision as urging us to overturn the judge's denial of his motion to modify or correct the award and, instead, confirm the award. Under N.J.S.A. 2A:23B-24(a), upon the filing of a timely application, "the court shall modify or correct the award" under the following limited circumstances:

> (1) there was an evident mathematical miscalculation or an evident mistake in the description of a person, thing, or property referred to in the award;
>
> (2) the arbitrator made an award on a claim not submitted to the arbitrator and the award may be corrected without affecting the merits of the decision upon the claims submitted; or
>
> (3) the award is imperfect in a matter of form not affecting the merits of the decision on the claims submitted.

"If an application made pursuant to [N.J.S.A. 2A:23B-24(a)] . . . is granted, the court shall modify or correct and confirm the award as modified or corrected. Otherwise, unless an application to vacate is pending, the court shall confirm the award." N.J.S.A. 2A:23B-24(b).

20

Thus, the Family Part's "scope of review of an arbitration award is narrow[,]" Fawzy, 199 N.J. at 470, and an arbitrator's award "is entitled to a presumption of validity." Twp. of Wyckoff v. PBA Local 261, 409 N.J. Super. 344, 354 (App. Div. 2009). Furthermore, "[t]o ensure finality, as well as to secure arbitration's speedy and inexpensive nature, there exists a strong preference for judicial confirmation of arbitration awards." Borough of East Rutherford, 213 N.J. at 201 (quoting Twp. of Middletown, 193 N.J. at 10). Here, we agree with the judge that defendant was not entitled to a modification or correction of the arbitration award and we discern no basis to disturb the judge's decision confirming the award.

In any event, in the arbitration agreement, the parties expressly waived their right to appeal the arbitration award.

> Under the amended Act, N.J.S.A. 2A:23B-1 to -32, which adopted a modified version of the Uniform Arbitration Act, parties to an arbitration agreement executed before the controversy to be arbitrated arises may not waive the requirement of N.J.S.A. 2A:23B-28[(a)](3), which states that an appeal may be taken from an order confirming or denying confirmation of an arbitration award. N.J.S.A. 2A:23B-4(b)[(1)]. . . . The new Act, however, does not bar waiver of appellate review where, as here, the arbitration agreement is executed after the controversy that is the subject of the arbitration agreement arises. Thus, in the post-dispute context, the parties are given more autonomy to agree

to provisions different from those required under the Act.

> [Van Duren v. Rzasa-Ormes, 394 N.J. Super. 254, 265 n.7 (App. Div. 2007) (citation omitted), aff'd, 195 N.J. 230 (2008).]

"If binding arbitration is selected as the forum for resolution of disputes[, as here], a litigant cannot jump back and forth between the court and the arbitral forum. By its very nature, arbitration does not permit such a hybrid system." Minkowitz, 433 N.J. Super. at 151.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION